## Murray v. Charleston.

1. Wherever rights, acknowledged and protected by the Constitution of the United States, are denied or invaded by State legislation, which is sustained by the judgment of a State court, this court is authorized to interfere. Its jurisdiction, therefore, to re-examine such judgment cannot be defeated by showing that the record does not in direct terms refer to some constitutional provision, nor expressly state that a Federal question was presented. The true jurisdictional test is, whether it appears that such a question was decided adversely to the Federal right.

2. The provision in that Constitution, that no State shall pass a law impairing the obligation of contracts, is a limitation upon the taxing power of a State as well as upon all its legislation, whatever form it may assume. Therefore, a law changing the stipulations of a contract, or relieving a debtor from a strict and literal compliance with its requirements, enacted by a State in the exercise of that power, is unconstitutional and void.

3. A city, when it borrows money and promises to repay it with interest, cannot, by its own ordinances, under the guise of taxation, relieve itself from performing to the letter all that it has expressly promised to its creditors.

4. Debts are not property. A non-resident creditor of a city cannot be said to be, in virtue of a debt which it owes him, a holder of property within its limits.

ERROR to the Supreme Court of the State of South Carolina.

In 1783, the State of South Carolina incorporated the city of Charleston. Among other powers conferred upon it was that of making " such assessments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit, and advantage of the city, as shall appear to them expedient."

Under this power, there was an ordinance of the city, ratified March 22, 1870, " to raise supplies for the fiscal year ending Dec. 31, 1870." Sect. 1 authorizes and requires the city appraiser to assess a tax of two cents upon the dollar of the value of all real and personal property in the city, for the purpose of meeting the expenses of the city government for the current fiscal year.

Sect. 3 directs that the tax assessed on city stock shall be retained by the city treasurer out of the interest thereon, when the same is due and payable.

A similar ordinance was ratified March 1, 1871, for the fiscal year ending Dec. 31, 1871.

The tax was accordingly assessed. That upon the city stock was retained out of the interest due on it to the holders thereof.

Murray, as a holder, brought suit, Nov. 17, 1871, in the Court of Common Pleas for the county of Charleston against the city council of Charleston, to recover the amount of the tax which the treasurer had retained out of the interest due to him, alleging that the said tax was illegal.

The answer of the council, among other matters, sets forth that the stock was duly assessed, and that it was not expressly exempted from taxation by the ordinance under which it was issued.

The court tried the case without a jury, and found the following facts: 1. That the plaintiff has been, since January, 1870, the holder and owner of $35,262.33 of six per cent stock issued by defendant, the interest thereon payable quarterly. 2. That the plaintiff is not a resident of Charleston, but a resident of

Bonn, Germany. 3. That the defendant owed the plaintiff for interest on his said stock the several sums set forth in the fourth paragraph of the complaint, on the several days therein named, and that it paid the same to him, less certain sums retained. 4. That the several sums so retained by the defendant, amounting in all to $440.75, were by the defendant kept as the amount of taxes due from the said plaintiff to the said city, being a tax at the rate of two per cent per annum upon the principal of said stock, said tax being imposed by virtue of the ordinance of the said city council of Charleston, ratified March 22, 1870, entitled "An ordinance to raise supplies for the fiscal year ending Dec. 31, 1870," and a similar ordinance, ratified March 1, 1871, to raise supplies for the fiscal year ending Dec. 31, 1871, and that said stock was not specifically exempted from taxation by the ordinance under which it was issued. 5. That the plaintiff, by his agent, protested against the deduction of said tax, and duly entered his protest on each receipt for interest on said stock.

The court announced as conclusions of law: 1. That the city council of Charleston, as a municipal corporation, has a right, under the constitution and laws of the State, to tax the property of the plaintiff invested in stock issued by it, said stock not being specifically exempted by law from taxation, nor being exempt from taxation by the ordinance under which it was issued. 2. That the city council of Charleston had a right to collect the tax imposed on the property of the plaintiff in said stock by retaining the amount of such tax out of payments made to the plaintiff on account of the interest due thereon, and the plaintiff cannot recover the same.

Judgment was accordingly rendered, whereupon Murray appealed to the Supreme Court, and in his notice of appeal set forth the following grounds: 1. That plaintiff, being resident in a foreign country, is not liable to the tax levied and retained by the city council. 2. That the laws of the State do not authorize the city council to levy and retain a tax upon its own stock. 3. That the levying and retaining of said tax is a violation of good faith in the contract of loan, and impairs the obligation of said contract, and is, therefore, unconstitutional and void. The Supreme Court affirmed the judgment of the

Court of Common Pleas, and held that the stock was taxable property within the city, and that the right of taxing it " existed at the time of the contract, and so entered into it as to become one of its necessary elements and attributes. The obligation of the contract was not impaired by the imposition of the tax, because it was a property which attached to the contract."

Murray then sued out this writ of error.

Mr. *James Conner* for the plaintiff in error.

1. This court has jurisdiction. The plaintiff in error, in seeking to reverse the judgment of the Court of Common Pleas, specifically assigned in his notice of appeal that the tax impaired the obligation of his contract with the city. The constitutionality, therefore, of the ordinances levying the tax, which were passed in the exercise of an alleged authority derived from the State, was thus directly drawn in question and necessarily involved; and neither court could have decided adversely to him without affirming their validity.

2. The stock in question, although it be registered and the certificates transferable only on the books of the city, — a provision for the greater security of the holder, — does not differ in its legal effect from an ordinary money-bond. It is a chose in action, attesting his right to demand a specific sum at stated intervals, and the city's correlative obligation to pay it. Having, in this instance, its *situs* at a foreign domicile, it is not subject to the taxing power of Charleston, which is confined to persons and property within the limits of the city. *Railroad Company* v. *Jackson*, 7 Wall. 262; *Tappan* v. *Merchants' National Bank*, 19 id. 490; *State Tax on Foreign-Held Bonds*, 15 id. 300; *The City of Davenport* v. *The Mississippi & Missouri Railroad Co. et al.*, 12 Iowa, 539; *Hunter* v. *Board of Supervisors*, 33 id. 379; *The State* v. *Ross*, 3 Zab. (N. J.) 517; *Collins* v. *Miller*, 43 Ga. 336; *Johnson* v. *City Council of Oregon City*, 3 Oreg. 13.

3. The ordinances impose a tax upon a subsisting contract, and alter its terms by withholding part of the stipulated interest due thereon. They thus impair its obligation. The city cannot, by the exercise of its taxing power, find a justification in morals or in constitutional law for a breach of its contract.

*Weston and Others* v. *City Council of Charleston*, 2 Pet. 449 ;
3 Hamilton, Works, 519 ; *Jelison* v. *Lee et al.*, 3 Woodb. &
M. 376.

*Mr. Philip Phillips*, *Mr. R. B. Carpenter*, and *Mr. James B.
Campbell*, *contra*.

. 1. Murray did not, in the Common Pleas, put his right to
recover upon the ground that the ordinances levying the tax, ·
and directing that it be retained from the interest due upon his
stock, were in violation of the Constitution of the United States,
nor did he invoke the protection of that instrument. When the
Supreme Court of a State is asked to reverse the judgment of
a subordinate court, error in the record must be shown, and no
question can be made on any new matter presented in the ap-
pellate court ; and, to enable a party here to ask a reversal of a
judgment of the Supreme Court, it is not sufficient to show
that a Federal question was, by an assignment of error, raised
for the first time in that court.    *Fisher's Lessee* v. *Cockerell*,
5 Pet. 248.

2. The act of South Carolina granting the charter was in
force prior to the adoption of the Federal Constitution, and
neither it nor the ordinances passed pursuant to it are subject
. to the clause which forbids a State to pass a law impairing the
obligation of contracts.    No jurisdiction, therefore, exists here.
*Owings* v. *Speed et al.*, 5 Wheat. 420 ; *League* v. *De Young*,
11 How. 185.    The failure of the State court to give full effect
to a contract does not in itself furnish grounds for review.
*Knox* v. *Exchange Bank*, 12 Wall. 379.

3. The stock was not exempt from taxation by an ordinance
of the city or a law of the State.    Neither the decision of the
Supreme Court, holding that it was personal property within
the city, and that the ordinances imposing the tax were passed
in the execution of a power conferred by the charter and justi-
fied by its terms, nor the imputed injustice and oppression of
the tax, furnish grounds for review here.    *Providence Bank* v.
*Billings*, 4 Pet. 514 ; *Mills* v. *St. Clair County*, 8 How. 569 ;
*Satterlee* v. *Mathewson*, 2 Pet. 380; *West River Bridge Company*
v. *Dix*, 6 How. 507 ;  *Veazie Bank* v. *Fenno*, 8 Wall. 533.    The
taxing power of the several States, except where restrained by
the Federal or the State Constitution, extends to every species

of property which exists by their authority or is introduced by their permission. *McCullogh* v. *The State of Maryland*, 4 Wheat. 316; *Weston and Others* v. *City Council of Charleston*, 2 Pet. 449; *New Orleans* v. *Clark*, 95 U. S. 644; *Lane County* v. *Oregon*, 7 Wall. 71. Exemption from its exercise can never be claimed by mere implication, but only from clear and express declaration; and if such exemption be a mere gratuity, the act granting it may be modified or repealed in like manner as other legislation. *Tucker* v. *Ferguson*, 22 Wall. 527; *West Wisconsin Railroad Co.* v. *Board of Supervisors of Trempealeau County*, 93 U. S. 595. In this case, there is not even the slightest implication, nor presumption arising from the nature of the contract or otherwise, that the city renounced the right of taxing the stock.

4. Murray insists upon his non-residence. Tangible personal effects and real estate in Charleston are taxed there; and if sound reasons can be given for discriminating in favor of this property, they should be presented to the legislature, as they do not touch the case in its judicial aspects. If a citizen holds certificates of stock which may be taxed, his transfer of them to a non-resident does not create a new obligation, nor exclude the law from operating upon them. The same elements of consideration exist in each case, and the judgment must be the same. In *Catlin* v. *Hull* (21 Vt. 152), debts due to non-residents were taxed. The court said that the doctrine as to the *situs* of personal property did not conflict with the actual jurisdiction over it by the State where it is situated, or with the right to subject it, in common with other property, to share the burden of the government by taxation, and that this had been the settled practice of that State, not only in reference to tangible property, but to that which is incorporeal; and the late Chief Justice Tilghman held that personal property, if invisible (consisting of debts), has a locality in the place where the debtor resides. Story, Contr., sect. 383.

Charleston, in determining that property of this description, created by her authority and situate within her limits, should, without regard to the domicile of the owner, contribute its just share toward the public expenditure, followed a conspicuous example. By sect. 120 of the act of June 30, 1864 (13 Stat.

283), a tax was levied by the United States on the dividends of corporations, without reference to the citizenship of the owner of the stock; and this section was by the act of March 10, 1866, declared to embrace " non-residents, whether citizens or aliens." 14 id. 4.   By the act of July 13, 1866, a tax was levied upon the "gains and profits" of any business or trade carried on in the United States by " persons residing without the United States, not citizens thereof."   Id. 138.

At all events, Murray's claim that his stock was exempt from taxation by reason of his foreign residence, and that extra-terri- torial effect was given by the judgment below to a State law does not raise a Federal question.

5. The ordinances are not unconstitutional.   When the cer- tificates were issued, the council was vested with power to tax the stock.   They were, therefore, purchased with notice that they were subject to the exercise of that power, and they were held in subordination to it.   The law touching the liability of the *res* to taxation entered into the contract, and became one of its essential elements.   The ordinances do not engraft a new condition upon it, or modify its stipulations.   It is said, however, that its obligation is impaired, because, by reason of them, the holder receives a diminished income from it.   This is but another form of asserting that a tax cannot be rightfully assessed against the stock ; for, if it can, the mode of collecting it is immaterial.   Whether, when sued on a contract, the city can claim, by way of set-off, the taxes due to her from the plaintiff ; whether she can enforce the collection of them by suit, or by garnishment of moneys due to him, or by a summary sale of the *res*, — are matters of local jurisprudence, which have no more relation to the alleged Federal question involved, or to the real merits of the controversy, than has the proposition that taxes are not debts within the meaning of the legal-tender enactments. If the ordinances are valid without the provision for deducting the tax from the accrued interest and retaining it, they are valid with it.

The right of the States to tax their own securities has been judicially affirmed.   *Champaign County Bank* v. *Smith*, 7 Ohio St. 42 ; *People* v. *Home Insurance Co.*, 29 Cal. 533.   There is no reported case in conflict with these decisions.   Not only

does this conform to the settled practice of the British government, but the United States has asserted the same right. By sect. 49 of the act of Aug. 5, 1861 (12 Stat. 309), sect. 90 of the act of July, 1862 (id. 473), sect. 116 of the act of June 30, 1864 (13 id. 281), and by sect. 1 of the act of March 3, 1865 (id. 479), the tax on income includes bonds and other securities of the United States.

. It is no answer to say that such a tax is not directly laid upon the thing. If it be a breach of contract or of good faith to tax directly, it is equally so to secure the same result by indirect means. - That rule is not sound which makes the thing untaxable when it alone is assessed, and taxable when it is included with the rest of the owner's property of every kind.

MR. JUSTICE STRONG delivered the opinion of the court.

The plaintiff, a resident of Bonn, in Germany, was, prior to the first day of January, 1870, and he still is, the holder and owner of $35,262.35 of what is called stock of the city of Charleston. The stock is in reality a debt of the city, the evidence of which is certificates, whereby the city promises to pay to the owners thereof the sums of money therein mentioned, together with six per cent interest, payable quarterly. One-third of the interest due the plaintiff on the first days of April, July, and October, 1870, and January and July, 1871, having been retained by the city, this suit was brought to recover the sums so retained; and the answer to the complaint admitted the retention charged, but attempted to justify it under city ordinances of March 20, 1870, and March 21, 1871. By these ordinances, set out in full in the answer, the city appraiser was directed to assess a tax of two cents upon the dollar of the value of all real and personal property in the city of Charleston, for the purpose of meeting the expenses of the city government; and the third section of each ordinance declared that the taxes assessed on city stock should be retained by the city treasurer out of the interest thereon, when the same is due and payable. On these pleadings the case was submitted to the court for trial without a jury; and the court made a special finding of facts, substantially as set forth in the complaint and averred in the answer, upon which judgment

was given for the defendant.    This judgment was subsequently
affirmed by the Supreme Court, and the record is now be-
fore us, brought here by writ of error.    It is objected that
we have no jurisdiction of the case, because, it is said, no Fede-
ral question was raised of record, or decided in the Court of
Common Pleas, where the suit was commenced.

The city of Charleston was incorporated in 1783, before the
adoption of the Federal Constitution.    Among other powers
conferred upon the city council was one to " make such assess-
ments on the inhabitants of Charleston, or those who hold tax-
able property within the same, for the safety, convenience,
benefit, and advantage of the city, as shall appear to them ex-
pedient."    It was under this authority, repeated in subsequent
legislation, the city ordinances of 1870 and 1871 were made.
It may well be doubted whether the acts of the legislature
were intended to empower the city to tax for its own benefit
the debts it might owe to its creditors, especially to its non-
resident creditors.    Debts are not property.    A non-resident
creditor cannot be said to be, in virtue of a debt due to him, a
holder of property within the city; and the city council was
authorized to make assessments only upon the inhabitants of
Charleston, or those holding taxable property within the same.
To that extent the Supreme Court of the State has decided the
city has power to assess for taxation.    That decision we have
no authority to review.    But neither the charter itself, nor any
subsequent acts of legislation, directly or expressly interfered
with any debts due by the city, or gave to the city any power
over them.    They simply gave limited legislative power to the
city council.    It was not until the ordinances were passed
under the supposed authority of the legislative act that their
provisions became the law of the State.    It was only when the
ordinances assessed a tax upon the city debt, and required a
part of it to be withheld from the creditors, that it became the
law of the State that such a withholding could be made.    The
validity of the authority given by the State, as well as the va-
lidity of the ordinances themselves, was necessarily before the
Court of Common Pleas when this case was tried; and no
judgment could have been given for the defendants without
determining that the ordinances were laws of the State, not

impairing the obligation of the contracts made by the city
with the plaintiff. And when the case was removed into the
Supreme Court of the State, that court understood a Federal
question to be before it. One of the grounds of the notice of
the appeal was "that such a tax is a violation of good faith in
the contract of loan, impairs the obligation of said contract,
and is, therefore, unconstitutional and void." It is plain,
therefore, that both in the Common Pleas and in the Supreme
Court of the State a Federal question was presented by the
pleadings and was decided, — decided in favor of the State
legislation, and against a right the plaintiff claims he has under
the Constitution of the United States. The city ordinances
were in question on the ground of their repugnancy to the
inhibition upon the States to make any law impairing the obli-
gation of contracts; and the decision was in favor of their
validity. Nothing else was presented for decision, unless it be
the question whether the acts of the State legislature author-
ized the ordinances; and that was ruled affirmatively. The
jurisdiction of this court over the judgments of the highest
courts of the States is not to be avoided by the mere absence of
express reference to some provision of the Federal Constitution.
Wherever rights acknowledged and protected by that instru-
ment are denied or invaded under the shield of State legisla-
tion, this court is authorized to interfere. The form and mode
in which the Federal question is raised in the State court is of
minor importance, if, in fact, it was raised and decided. The
act of Congress of 1867 gives jurisdiction to this court over
final judgments in the highest courts of a State in suits "where
is drawn in question the validity of a statute of, or an au-
thority exercised under, any State, on the ground of their
being repugnant to the Constitution, treaties, or laws of the
United States, and the decision is in favor of their validity."
Not a word is said respecting the mode in which it shall be
made to appear that such a question was presented for de-
cision. In the present case, it was necessarily involved, with-
out any formal reference to any clause in the Constitution, and
it is difficult to see how any such reference could have been
made to appear expressly.

In questions relating to our jurisdiction, undue importance is

often attributed to the inquiry whether the pleadings in the
State court expressly assert a right under the Federal Consti-
tution. The true test is not whether the record exhibits an
express statement that a Federal question was presented, but
whether such a question was decided, and decided adversely to
the Federal right. Everywhere in our decisions it has been
held that we may review the judgments of a State court when
the determination or judgment of that court could not have
been given without deciding upon a right or authority claimed
to exist under the Constitution, laws, or treaties of the United
States, and deciding against that right. Very little importance
has been attached to the inquiry whether the Federal question
was formally raised. In *Crowell* v. *Randall* (10 Pet. 368), ·it
was laid down, after a review of almost all our previous deci-
sions, " that it is not necessary the question should appear on
the record to have been raised, and the decision made in direct
and positive terms, *in ipsissimis verbis*, but that it is sufficient
if it appears by clear and necessary intendment that the ques-
tion must have been raised, and must have been decided, in
order to have induced the judgment." This case was followed
by *Armstrong et al.* v. *The Treasurer of Athens County* (16 id.
281), where it was held sufficient to give this court jurisdiction
if it appear from the record of the State court that the Federal
question was necessarily involved in the decision, and that the
court could not have given the judgment or decree which they
passed without deciding it. See also *Bridge Proprietors* v. *The
Hoboken Company*, 1 Wall. 116, and *Furman* v. *Nichol*, 8 id.
44.

That involved in the judgment of the Court of Common
Pleas and in that of the Supreme Court of the State was a
decision that the city ordinances of Charleston were valid, that
they did control the contract of the city with the plaintiff, and
that they did not impair its obligation, is too plain for argu-
ment. The plaintiff complains that the city has not fully per-
formed its contracts according to their terms, that it has paid
only four per cent interest instead of six per cent, which it
promised to pay, and that it has retained two per cent of the
interest for its own use. The city admits all this, but attempts
to justify its retention of one-third of what it promised to pay

by pleading its own ordinances directing its officer to withhold the two per cent of the interest promised whenever it became due and payable according to the stipulations of the contract, calling the amount detained a tax. Of course, the question is directly presented whether the ordinances are a justification; whether they can and do relieve the debtor from full compliance with the promise; in other words, whether the ordinances are valid and may lawfully be applied to the contract. The court gave judgment for the defendant, which would have been impossible had it not been held that they have the force of law, notwithstanding the Constitution of the United States, and the Supreme Court affirmed the judgment. Our jurisdiction, therefore, is manifest.

We come, then, to the question whether the ordinances decided by the court to be valid did impair the obligation of the city's contract with the plaintiff. The solution of this question depends upon a correct understanding of what that obligation was. By the certificates of stock, or city loan, held by the plaintiff, the city assumed to pay to him the sum mentioned in them, and to pay six per cent interest in quarterly payments. The obligation undertaken, therefore, was both to pay the interest at the rate specified, and to pay it to the plaintiff. Such was the contract, and such was the whole contract. It contained no reservation or restriction of the duty described. But the city ordinances, if they can have any force, change both the form and effect of the undertaking. They are the language of the promisor. In substance, they say to the creditor: " True, our assumption was to pay to you quarterly a sum of money equal to six per cent per annum on the debt we owe you. Such was our express engagement. But we now lessen our obligation. Instead of paying all the interest to you, we retain a part for ourselves, and substitute the part retained for a part of what we expressly promised you." Thus applying the ordinances to the contract, it becomes a very different thing from what it was when it was made; and the change is effected by legislation, by ordinances of the city, enacted under the asserted authority of laws passed by the legislature. That by such legislation the obligation of the contract is impaired is manifest enough, unless it can be held there was some implied reser-

vation of a right in the creditor to change its terms, a right reserved when the contract was made, — unless some power was withheld, not expressed or disclosed, but which entered into and limited the express undertaking. But how that can be, — how an express contract can contain an implication, or consist with a reservation directly contrary to the words of the instrument, has never yet been discovered.

It has been strenuously argued on behalf of the defendant that the State of South Carolina and the city council of Charleston possessed the power of taxation when the contracts were made, that by the contracts the city did not surrender this power, that, therefore, the contracts were subject to its possible exercise, and that the city ordinances were only an exertion of it. We are told the power of a State to impose taxes upon subjects within its jurisdiction is unlimited (with some few exceptions), and that it extends to every thing that exists by its authority or is introduced by its permission. Hence it is inferred that the contracts of the city of Charleston were made with reference to this power, and in subordination to it.

All this may be admitted, but it does not meet the case of the defendant. We do not question the existence of a State power to levy taxes as claimed, nor the subordination of contracts to it, so far as it is unrestrained by constitutional limitation. But the power is not without limits, and one of its limitations is found in the clause of the Federal Constitution, that no State shall pass a law impairing the obligation of contracts. A change of the expressed stipulations of a contract, or a relief of a debtor from strict and literal compliance with its requirements, can no more be effected by an exertion of the taxing power than it can be by the exertion of any other power of a State legislature. The constitutional provision against impairing contract obligations is a limitation upon the taxing power, as well as upon all legislation, whatever form it may assume. Indeed, attempted State taxation is the mode most frequently adopted to affect contracts contrary to the constitutional inhibition. It most frequently calls for the exercise of our supervisory power. It may, then, safely be affirmed that no State, by virtue of its taxing power, can say to

a debtor, " You need not pay to your creditor all of what you have promised to him. You may satisfy your duty to him by retaining a part for yourself, or for some municipality, or for the State treasury." Much less can a city say, " We will tax our debt to you, and in virtue of the tax withhold a part for our own use."

What, then, is meant by the doctrine that contracts are made with reference to the taxing power resident in the State, and in subordination to it? Is it meant that when a person lends money to a State, or to a municipal division of the State having the power of taxation. there is in the contract a tacit reservation of a right in the debtor to raise contributions out of the money promised to be paid before payment? That cannot be, because if it could, the contract (in the language of Alexander Hamilton) would " involve two contradictory things: an obligation to do, and a right not to do; an obligation to pay a certain sum, and a right to retain it in the shape of a tax. It is against the rules, both of law and of reason, to admit by implication in the construction of a contract a principle which goes in destruction of it." The truth is, States and cities, when they borrow money and contract to repay it with interest, are not acting as sovereignties. They come down to the level of ordinary individuals. Their contracts have the same meaning as that of similar contracts between private persons. Hence, instead of there being in the undertaking of a State or city to pay, a reservation of a sovereign right to withhold payment, the contract should be regarded as an assurance that such a right will not be exercised. A promise to pay, with a reserved right to deny or change the effect of the promise, is an absurdity.

Is, then, property, which consists in the promise of a State, or of a municipality of a State, beyond the reach of taxation? We do not affirm that it is. A State may undoubtedly tax any of its creditors within its jurisdiction for the debt due to him, and regulate the amount of the tax by the rate of interest the debt bears, if its promise be left unchanged. A tax thus laid impairs no obligation assumed. It leaves the contract untouched. But until payment of the debt or interest has been made, as stipulated, we think no act of State sovereignty can work an exoneration from what has been promised to the

creditor; namely, payment to him, without a violation of the Constitution. "The true rule of every case of property founded on contract with the government is this: It must first be reduced into possession, and then it will become subject, in common with other similar property, to the right of the government to raise contributions upon it. It may be said that the government may fulfil this principle by paying the interest with one hand, and taking back the amount of the tax with the other. But to this the answer is, that, to comply truly with the rule, the tax must be upon all the money of the community, not upon the particular portion of it which is paid to the public creditors, and it ought besides to be so regulated as not to include a lien of the tax upon the fund. The creditor should be no otherwise acted upon than as every other possessor of money; and, consequently, the money he receives from the public can then only be a fit subject of taxation when it is entirely separated" (from the contract), "and thrown undistinguished into the common mass." 3 Hamilton, Works, 514 *et seq.* Thus only can contracts with the State be allowed to have the same meaning as all other similar contracts have.

Such limitations of the power of State taxation we have heretofore recognized. We have held property in one stage of its ownership not to be taxable, and in a succeeding stage to be taxable. Those decisions are not without some analogy to the rule we have mentioned. Thus, in *Brown* v. *Maryland* (12 Wheat. 419–441), where it was held that a State tax could not be levied, by the requisition of a license, upon importers of merchandise by the bale or package, or upon other persons selling the goods imported by the bale or package, Mr. Chief Justice Marshall, considering both the prohibition upon States against taxing imports, and their general power to tax persons and property, said: "Where the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State." *Vide* also *Woodruff* v. *Parham*, 8 Wall. 123; State Tax on Railway Gross Receipts, 15 id. 284. A tax on income derived from contracts, if it does not prevent the receipt of the income, cannot be said

to vary or lessen the debtor's obligation imposed by the contracts.

In opposition to the conclusion we have reached we are referred to *Champaign County Bank* v. *Smith* (7 Ohio St. 42), and *People.* v. *Home Insurance Co.* (29 Cal. 533), in which it is said the power of a State to tax its own bonds was sustained. We do not, however, regard those cases as in conflict with the opinion we now hold; and, if they were, they would not control our judgment when we are called upon to determine the meaning and extent of the Federal Constitution.   In the former, it appeared that the tax collected was in virtue of an assessment of State bonds belonging to the bank, but deposited with the auditor of State as security for the circulating notes of the company.   The tax thus assessed having been carried into the duplicate, the collector seized and appropriated the bank-notes and money of the bank, and suit was brought to recover the amount so taken.   In sustaining a demurrer to the petition, the court held, it is true, that a State has power to tax its own bonds equally with other property, and that the exercise of such a power involves no violation of a contract.   But it was not held that the State could collect the tax by withholding from the creditor any part of what the State had assumed to pay.   The tax was laid not upon the debt, but upon the creditor; and it was collected not out of what the State owed, but out of the general property of the bank.   Neither by the assessment nor in the collection was there any interference with the contract.   In *People* v. *Home Insurance Company*, the question was whether bonds of the State of California, belonging to a New York insurance company, but deposited and kept in the State, as required by an act to tax and regulate foreign insurance companies doing business in the State, were assessable for taxation there.   It was ruled that they were.   This case, no more than the former, meets the question we have before us. It certainly does not hold that a State or a city, by virtue of its taxing power, can convert its undertaking to pay a debt bearing six per cent interest into one bearing only four.

These are the only cases cited to us as directly sustaining the judgment we have now in view.   How far short of sustaining it they are must be apparent,   And we know of none that

are more in point. It seems incredible that there can be any, for, as we said in *Railroad Company* v. *Pennsylvania* (15 Wall. 300), "the law which requires the treasurer of the company (indebted) to retain five per cent of the interest due to the non-resident bondholder is not . . : a legitimate exercise of the taxing power. It is a law which interferes between the company and the bondholder, and, under the pretence of levying a tax, commands the company to withhold a portion of the stipulated interest and pay it over to the State. It is a law which thus impairs the obligation of the contract between the parties. The obligation of a contract depends upon its terms and the means which the law in existence at the time affords for its enforcement. A law which alters the terms of a contract, by imposing new conditions, or dispensing with those expressed, is a law which impairs its obligation; for such a law . . . relieves the parties from the moral duty of performing the original stipulations of the contract, and it prevents their legal enforcement." This was said, it is true, in a case where the question was, whether a tax thus imposed upon a non-resident holder of bonds issued by a company chartered by the State was warranted by the Constitution. But, so far as it speaks of what constitutes impairing the contract obligation, it is applicable, in its fullest extent, to all legislation affecting contracts, no matter who may be the parties.

We do not care now to enter upon the consideration of the question whether a State can tax a debt due by one of its citizens or municipalities to a non-resident creditor, or whether it has any jurisdiction over such a creditor, or over the credit he owns. Such a discussion is not necessary, and it may be doubtful whether the question is presented to us by this record.

It is enough for the present case that we hold, as we do, that no municipality of a State can, by its own ordinances, under the guise of taxation, relieve itself from performing to the letter all that it has expressly promised to its creditors.

There is no more important provision in the Federal Constitution than the one which prohibits States from passing laws impairing the obligation of contracts, and it is one of the highest duties of this court to take care the prohibition shall neither be evaded nor frittered away. Complete effect must be given

to it in all its spirit. The inviolability of contracts, and the. duty of performing them, as made, are foundations of all well-ordered society, and to prevent the removal or disturbance of these foundations was one of the great objects for which the Constitution was framed.

The judgment of the Supreme Court of South Carolina will be reversed, and the record remitted with instructions to proceed in accordance with this opinion ; and it is

*So ordered.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE HUNT, dissenting.

I am of opinion that the power of taxation found in the charter of the city of Charleston, long before the contract was made which is here sued on, entered, like all other laws, into the contract, and became a part of it. In other words, the contract was made subject to this power of taxation by the city of Charleston, as found in her charter from 1781 to the present time.

The imposition and collection of this tax cannot, therefore, impair the obligation of a contract which was made subject to her right to exercise that power. I therefore dissent.

NOTE. — In *Jenkins* v. *Charleston*, error to the Supreme Court of the State of South Carolina, which was argued by *Mr. A. G. Magrath* and *Mr. James Lowndes* for the plaintiff in error, and by the same counsel for the defendant in error as was the preceding case, MR. JUSTICE STRONG, in delivering the opinion of the court, remarked: This case is like *Murray* v. *Charleston*, and is governed by the decision there made.

The judgment of the Supreme Court of the State will be reversed, and the record remitted with instructions to proceed in accordance with this opinion; and it is

*So ordered.*

MR. JUSTICE MILLER and MR. JUSTICE HUNT dissented.