# CHARLESTON.

## CROSS v. W. VA. CENT. & PA. R'Y CO.

Submitted March 19, 1891.—Decided March 24, 1891.

1. RAILROAD COMPANIES—CUMULATIVE VOTING.

The West Virginia Central Railway Company is subject to the laws of this State, which provide that in all elections for directors or managers of incorporated companies every stockholder shall have the right to vote in person or by proxy for the number of shares of stock owned by him for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candi-

dates as he shall think fit, and that this mode of electing may be enforced by *mandamus.*

2. RAILROAD COMPANIES—PUBLICATION—ABSENT DEFENDANT.
    An order of publication in such case can be taken against such persons, members of the board of directors, as are non-residents.

*Flournoy & Price* and *W. I. Cross* for petitioner, cited 17 W. Va. 620; Id. 396; 99 U. S. 624; 13 Otto 480; Code, c. 52, ss. 18, 20; Id. c. 124, ss. 2, 7, 13; Id., c. 54, ss. 24, 36, 37, 40, 67, 70; 3 Key. 81; 27 W. Va. 762; 7 Pet. 252; 2 Pet. 556; 3 Wheat. 591; 9 Wheat. 738; 2 Madd. Ch'y 142; 7 Wall. 425; 18 Wall. 391; 113 U. S. 465; 15 Ohio St. 21; 22 Ohio St. 411; 132 U. S. 75; 2 Mor. Corp. 1095; 15 Wall. 478, 498; 13 Wall. 214; Tayl. Priv. Corp. § 499; Cool. Const. Lim. §§ 151, 152; 12 Mass. 555–563; 8 W. Va. 74, 87; Id. 720, 730–733; 18 Gratt. 300; 26 W. Va. 257; Const. Art. VI, s. 30; 17 Wall. 425; 26 W. Va. 62–75; 7 W. Va. 525; 9 W. Va. 162; 1 Vroom 368; 2 Vroom 575; 18 Gratt. 295; 25 W. Va. 325, 373; 28 W. Va. 698; 11 W. Va. 501; 13 Mich. 482–497; Code (1868) c. 53, ss. 6, 7; 16 W. Va. 402; 13 W. Va. 686; Acts 1872–3, c. 88; 5 Ind. 49; 31 W. Va. 781.

*W. C. Clayton* and *C. W. Dailey* cited Code, c. 123, s. 3; 41 N. J. L. 250; 42 N. J. L. 402; High Ex. Leg. Rem. §§ 9, 16, 49, 440; 17 Otto 174; 2 Otto 665; 37 Md. 537-567; 113 U. S. 465; Const. Art. XI, s. 4; Code, c. 53, ss. 5, 9; Id. c. 54, ss. 12, 56, 70; Acts 1872–3 c. 181, s. 44; 8 W. Va. 74; 25 W. Va. 324; 4 Wheat. 518; 82 Pa. St. 518; 78 Mo. 185; 109 Pa. St. 471; 44 Conn. 318; 3 Johns. Cas. 78; 2 Johns. Cas. 217; 12 Am. Dec. 26; 58 Am. Dec. 398; 1 Wood R'y Law § 144; 18 Ind. 327; 1 Ark. 513; 3 Ark. 570; 39 N. J. L. 677; 17 W. Va. 640; 19 Wend. 37; 13 N. E. Rep. 279.

HOLT, JUDGE:

The relator, W. Irvine Cross, claiming to have been duly elected by the cumulative system of voting one of the board of directors of the railway company for the year commencing on the 27th January, 1891, and that he is unlawfully kept out of his office by one T. B. Davis, acting at

the instance and under the advice of the railway company, did on the 11th February, 1891, sue out of this court this alternative writ of *mandamus* against the company, T. B. Davis, and others, to show cause why the peremptory writ of *mandamus* prayed for to receive and recognize him as a member of such board should not be granted. By section 3, art. VIII, Const. (Code W. Va. p. 32) the Supreme Court of Appeals has both original and appellate jurisdiction in cases of *mandamus*. But by rule of court No. 13 (23 W. Va. 829) application is not to be made to this Court in the first instance unless special reason be shown. The special reason shown was that it was not likely that the relator in the ordinary course of business could get the case finally determined within the year if the proceeding were commenced in the Circuit Court. The defendant company claims the inception of its present charter under and by virtue of the act of the legislature of February 26, 1866 (chapter 80, Acts 1866). Section 4, Art. XI, State Const. (Code, p. 40) and various acts made in pursuance thereof provide that in all elections for directors *etc.*, the stockholders may cumulate their votes. Plaintiff claims that the defendant company is subject to this law. Defendant claims that the constitution and laws in that regard do not apply to it.

This is the main question in controversy sought to be determined by this proceeding. Does the right to cumulate votes apply to the defendant company? Various answers by way of return have been filed, among them the answer of the defendant company, to which plaintiff has demurred, so that the facts out of which the point of law must arise are determined by the pleadings. The legislature of the State of West Virginia, by act of 26th February, 1866 (see Acts 1866, p. 80) incorporated the persons named, and such other persons as might become associated with them, as a body corporate by the name of "The Potomac and Piedmont Coal and Railroad Company." The persons named, H. G. Davis and six others, were to manage the affairs of the company as directors constituted for the purpose, until directors should be elected as provided for. The first section gave power and authority to make and pass such by-laws, rules and regulations as might be

deemed necessary and proper, "provided, however, that such by-laws should not be repugnant to any law of this state or of the United States. Capital stock was not to exceed five million dollars, divided into shares of one hundred dollars each, to be personal property, "and each share thereof shall entitle the holder thereof to one vote in all meetings of the stockholders of said company." The ninth and last section is as follows: "The legislature reserves the right to alter or amend this act, but such alteration shall not affect or impair the right of the creditors to have the property applied in discharge of their respective claims, or of the stockholders to have the surplus distributed according to their respective interests."

I quote these parts of the act of incorporation of the original company because defendants claim that the mode of voting—one share, one vote—is of the nature of a contract binding the State not to impair it, and that the requiring and authorizing cumulative voting is such impairment, and is obnoxious to Section 10, Art. I, of the Constitution of the United States. But the conclusion on this point, reached after careful consideration, is that the State constitution and laws authorizing a stockholder to cumulate his votes constitute no such impairment, for the reason, among others, that the legislature in the last section of the act of incorporation reserves the right to alter and amend, and in the latter part of the first section requires that all the rules, by-laws, and regulations shall not be repugnant to any law of the State then in force, or which might be passed under the power reserved. In *Hays* v. *Comm.* 82 Pa. St. 518, such a mode of voting was held to be within the protection of the Constitution of the United States, as within the obligation assumed by grant of the charter. I do not propose to discuss this question. Here the power to alter is reserved, and such mode of voting is not irrepealable or beyond amendment. *State* v. *Miller*, 30 N. J. Law, 368, (86 Amer. Dec. 188, and notes); *Murray* v. *Charleston*, 96 U. S. 432; *Railway Co.* v. *Georgia*, 98 U. S. 359; *Railroad Cos.* v. *Gaines*, 97 U. S. 697.

The incorporators constituted directors by the act as such accepted the charter and appointed persons to obtain

subscriptions, and on 9th March, 1871, they met in the town of Piedmont, Mineral county, W. Va., and passed a resolution that enough stock had been subscribed to justify the company in proceeding with their business. By act of 16th February, 1871 (Acts 1881, p. 74) time was given to organize within three years from the date of the act. As early as January, 1872, the company had surveyed a large part of the line of its proposed railway in Mineral county. The present constitution of West Virginia was adopted and took effect on the 22d day of August, 1872. Article XI, § 1, (see Code, p. 40) forbids the creation of corporations by special law. Section 3 extends the time for organizing for two years from the time the constitution should take effect. Section 4, article XI, is as as follows:

" The legislature shall provide by law that in all elections for directors or managers of incorporated companies every stockholder shall have the right to vote in person or by proxy for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of the shares of his stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner."

I see no reason why this latter clause should not be construed as of its own force controlling the manner of electing directors under this charter prospectively. But if it needed legislative enactment to put this constitutional provision in force this was made in the language of the constitution by act of December 20, 1873. See Acts 1872–73, c. 181, p. 535. This was re-enacted in the general law of March 14, 1881. See section 56, c. 17, Acts 1881; also section 67, same act (Acts 1881, p. 236). Section 67 provides that " all existing railroad corporations within this State shall respectively have and possess all the powers and privileges and be subject to all the duties and liabilities and provisions contained in this chapter." And these two sections are in the present Code. See Code W. Va. c. 54, §§ 56, 67.

By act of February 23, 1881 (see Acts 1881, p. 311) the
act of February 26, 1866, incorporating the Potomac &
Piedmont Coal and Railroad Company was amended and
re-enacted, changing the name to the "West Virginia Central and Pittsburg Railway Company," retaining the provision that the rules, regulations, and by-laws shall not be
repugnant to any law of the State or of the United States;
also the section reserving the right to alter and amend;
also in section 2 that provision that each share shall entitle the holder to one vote; and it is hardly necessary to
add that this provision is nugatory and of no effect, being
in the teeth of the constitutional provisions, and of earlier
and later laws made in pursuance thereof. See Act March
25, 1882 (section 44, c. 96, Acts 1882). This corporation
was created by the laws of this State, its road runs through
the counties of Mineral, Grant, Tucker and Randolph, and
there can be no reasonable question that the stockholders
have and had on the 27th January, 1891, the right to cumulate their votes in voting for the election of directors.

The president of the company, Henry G. Davis, resides
in this State; also defendant Thomas B. Davis, who is
recognized by the company and by its board of directors
as a director filling the place as one of the directors which
the relator was duly elected to fill. The company has an
office in the county of Mineral, and an agent residing there,
appointed in pursuance of our statute to accept service of
process. The chief office is in the city of Baltimore, but
by by-law the annual meeting of the stockholders may be
held in that city, or in the town of Piedmont, Mineral
county. On January 27, 1891, at the regular annual meeting of the stockholders held at Piedmont, W. Irvine
Cross, the relator, was duly elected by the cumulative manner of voting one of the board of directors for the year
commencing January 27, 1891, and ending January 27,
1892, receiving from stockholders owning nearly one million dollars, or one-fifth of the par value of the whole stock,
more than fifty per cent. more votes than any other one.
Henry G. Davis, Stephen B. Elkins, John A. Hambleton,
James G. Blaine, R. C. Kerens and W. W. Taylor were
duly elected as six of the seven directors, each receiving

forty four- thousand, one hundred and ninety three votes, and the relator, W. Irvine Cross, as a question of admitted fact, if our view of the law is correct, was also elected as director, receiving sixty eight thousand and six hundred votes; yet the company by its executive head declared defendant Thomas B. Davis elected, who received but forty four thousand and ninety three votes, the fewest of all, has since recognized him as a director, and refused to declare the relator to be elected and to recognize or permit him to act as such. All this was done, I have no doubt, in good faith, believing, as they were advised, that the law of cumulative voting did not apply to their company, or, if applying, was of no effect as impairing the State's charter obligation. Of these seven defendants, Henry G. Davis, Stephen B. Elkins, and Thomas B. Davis are residents of this State; the others, four in number, are non-residents, and have been proceeded against by order of publication duly taken and executed.

Is *mandamus*, in this State, the proper remedy? The respondents say not; that it should have been by writ of *quo warranto*, or information in the nature of such writ. In some States a *quo warranto* information is used to test the title of directors in an incorporated company. Why it has not been so used in this State the following, among other, reasons may be given: It is the appropriate remedy for resuming or abolishing corporate privileges and franchises granted, but non-used or misused, or for usurpation of such as are not conferred by law, or have been obtained by fraud, or are used for a purpose not authorized, and against any person who shall intrude into or usurp any public office, but not in the latter case when it is comprehended by the statutory mode of contesting an election. All these, while not intended to be an exhaustive enumeration, are mentioned in our statute. Code W. Va. p. 739.

But the traditional history of the remedy has not been such with us as to induce its use in doubtful cases, or to lead to the gradual enlargement of its scope; and as to office, we have adhered to the idea that it applies to a public office, and not to the functionaries of private corporations. We have but two reported cases on the subject

of information in the nature of *quo warranto:*     *Comm.* v. *Birchett,* 2 Va. Cas. 51, to remove a justice of the peace, decided by the general court in 1816; and *Comm.* v. *President etc.,* Id. 190, decided in 1819, to vacate the charter. Another reason might be that, although the incumbent might be removed by this proceeding, a *mandamus* might still be needed to compel the relator to be inducted or recognized.

On January 22, 1799, an act was passed removing certain difficulties and delays attending the proceedings on writs of *mandamus;* and this statute, without change, is a part of our present Code. See chapter 109, p. 739. Those familiar with our Circuit Court practice in *mandamus,* or those who have taken the trouble to examine the fifty cases that have found their way to our courts of last resort during the past one hundred years, know that our practice is to enlarge and advance this remedy, rather than to restrict and restrain it, to allow amendments to meet the justice of the case, and to make it flexible to accomplish the relief to which the party shows himself entitled, where there is no other complete and adequate legal remedy.

*Smith* v. *Dyer,* 1 Call (s. p.) 562, is one of our earliest reported cases, decided April 27, 1799. Here Abraham Smith was *de facto* clerk of the County Court of Pendleton. The District Court granted a rule upon the clerk, Smith, and the justices to show cause why Dyer should not be reinstated. Depositions were taken. Six of the justices returned that Dyer was never duly elected and sworn, but that Smith was duly elected, sworn and admitted. The District Court awarded a peremptory *mandamus* to restore, and on appeal to the Court of Appeals that judgment was affirmed. The writ was not served on all the justices, but upon those composing the court on June 6, 1798.

*Dew* v. *Judges,* 3 H. & M. 1, was decided October 13, 1808. The court there held that the writ of *mandamus* is the proper remedy to restore a clerk ousted from his office by the illegal appointment of another person. This is our leading case upon the subject, in which it was contended that *quo warranto,* and not *mandamus,* was the proper remedy; but the court held *mandamus* to be proper,

citing a case not reported, decided in 1786, in which James Bland was by *mandamus* restored to the office of clerk of the County Court of Westmoreland, and that it was the proper remedy to admit as well as to restore to such office.

*Booker* v. *Young,* 12 Gratt. 306 (decided April, 1855) was a *mandamus* to compel the directors of the branch of the Exchange Bank at Clarksville to admit S. D. Booker, the relator, to the office of president of said branch bank. The proceeding by way of *mandamus* seemed to the court to be a fair, convenient and speedy mode of litigating and deciding upon such questions.

In *Fisher* v. *City of Charleston,* 17 W. Va. 595, and *Fisher* v. *Mayor etc.,* Id. 628, there is a full discussion of our practice in such cases. Aside from the merits, except so far as modes of procedure are questions of merit, the defendants interpose various grounds of objections to the peremptory writ, among them a motion to quash the alternative writ. "When a writ of *mandamus* is issued the return thereto shall state plainly and concisely the matter of law or fact relied on in opposition to the complaint." Code, c. 109, s. 1.

The proceedings in this case were taken in conformity to the practice as recognized and sanctioned in *Fisher* v. *City of Charleston,* 17 W. Va. 595. A petition was filed, making what was for the occasion taken as a *prima facie* case, and on motion of the complainant an order was entered reciting the filing of the petition, which orders the defendants to appear and show cause why the writ of *mandamus* prayed for should not be awarded, and that it might be served by serving a copy of the order, which was to be taken and treated as the alternative writ, to be served by copy, and by order of publication against non-residents. This the defendants have treated as the alternative writ, and have moved to quash the same; also to quash the return of service.

I regard the rule treated as an alternative writ as making a *prima facie* case on facts specifically and sufficiently stated. The motion to quash must therefore be overruled.

It is contended by the defendants that no order of publication can be taken against them. The order of the

court awards the alternative writ of *mandamus* against the railway company sued by its corporate name, and each one of the seven persons composing the board of directors, four of whom, as appears by affidavit filed, are non-residents; and against the non-residents an order of publication was entered, executed and returned. Section 2, c. 124, p. 776, Code W. Va. says : "Process to commence suits, including writ of *scire facias, mandamus, quo warranto, certiorari,* prohibition, and the *alias* or other process, * * . * may be served," *etc.* Section 11, c. 124, p. 778, Id., says : "On affidavit that a defendant is not a resident of this State * * * an order of publication may be entered against such defendant." It is hardly necessary to say that the proceeding by *mandamus* is a suit, and by our statute (Code, c. 109) assimilated to the ordinary action at law. The alternative writ is treated as the declaration and the process to be served by copy, the (answer) return as a demurrer or plea, to which return plaintiff may demur or plead specially or both.

Defendants say that the individual members of the board of directors are necessary parties in this proceeding, being the only tangible organ of the corporate entity; but, inasmuch as they can not be reached by attachment or personal judgment, therefore they can not be proceeded against as non-residents by order of publication. What the court may do or can do is an after-matter. If they are not improper parties, then they come within both the letter and spirit of our statute on the subject. We have already said that the order reciting the facts set out in the petition and awarding the alternative writ as matter of convenience and as process to give notice by serving a copy is to be taken as the alternative writ; that defendant's motion to quash it, taken as a general demurrer, must be overruled, seeing that the facts stated therein show *prima facie* that he has the specific right claimed, and that *mandamus* is his proper remedy ; and this brings us to the defendant company's answer or return and complainant's demurrer thereto.

Here we assume to be true all the material averments of the alternative writ which are either not denied by the

answer or return or not confessed and sufficiently avoided; and all matters sufficiently pleaded in the return or answer are for the purposes of the demurrer taken to be true; but, if the answer or return raises no question of fact, then it is but a demurrer itself, to which, of course, no demurrer is necessary.

The defendant company, by its answer, says, it is a corporation of the State of West Virginia, duly incorporated under the laws of said State, and for cause against the peremptory writ prayed for says that it has no power to receive or recognize the plaintiff as a director for the year beginning 27th January, 1891, but that such recognition can only be made by its board of directors; that the board consists of seven members; that three, naming them, are residents of this State; that one of them, H. G. Davis, has not been served with process (and this is true); that the remaining four, a majority of the board, are non-residents of the State; that service by order of publication is not sufficient, and that they are without the jurisdiction of this Court, and can not be reached by the process of the court to enforce obedience to its commands; that the writ, although served on G. W. Harrison, the attorney appointed by the company to accept service in ordinary cases as required by statute, yet could not be accepted by Harrison in this case, as he had no authority to recognize the complainant as a director. The rest of the defendant Company's answer is taken up with setting out the facts and referring to the act of incorporation and other acts already given.

The Code, c. 54, s. 24, requires the corporation to appoint some person residing in this State to accept service on behalf of the company, and upon whom service may be had of any process or notice. The record shows that the alternative writ was served on the defendant company by delivering an attested copy to George W. Harrison, a resident of Piedmont, Mineral county, W. Va., the agent and attorney in fact for said company, appointed pursuant to law by power of attorney dated May 30, 1888, and recorded in that county, to accept service. That would seem to be a good service on the company. I do not think that a railway

company created by this State, and having its road in this State, can be considered as without the jurisdiction of the courts in a case of *mandamus*, because a majority of its board of directors are non-residents. It may embarrass the court in enforcing obedience, but I take it for granted that after it has been authoritatively and finally decided that the system of cumulative voting applies to this corporation and does not violate any charter-right, there will be no necessity for devising extraordinary means to give such decision practical effect.

For the reasons given we hold that the law giving the right to stockholders to cumulate their votes in the election for directors or managers applies to the defendant corporation, and that the complainant, W. Irvine Cross, was on the 27th day of January, 1891, duly elected a director for one year commencing on that day; that defendant Thomas B. Davis was not elected a director on that day for such year; and that said Davis was improperly and illegally declared elected; and that the complainant W. Irvine Cross should have been declared so elected. We regard the respective answers filed to be insufficient in law; the demurrers thereto to be well taken, and that the peremptory writ of *mandamus* should go, requiring the said Thomas B. Davis to vacate the office of director of said company now held by him, and surrender the same to the complainant, W. Irvine Cross, and commanding the defendant company, by its board of directors, officers, agents and servants or by other proper means to receive and recognize the complainant, W. Irvine Cross, as such director in the place and stead of defendant Thomas B. Davis.

MANDAMUS ISSUED.