PYLE, Sheriff, v. BRENNEMAN.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1903.)

No. 465.

1. TAXATION—BANK DEPOSIT—SITUS.

A deposit in a bank to the credit of the depositor, and subject to his check, is a debt, and not property, and its situs for the purpose of taxation is in the state of the depositor's domicile.

2. SAME—EQUITY JURISDICTION—ENJOINING COLLECTION OF ILLEGAL TAX.

A court of equity has jurisdiction to enjoin the collection of an illegal tax where the person against whom it is assessed has no adequate remedy at law, as under the laws of West Virginia, where he is compelled to submit to the decision of a special tribunal, whose decisions are not subject to judicial review, and where, if he pays the tax under protest, it can only be recovered back by separate actions against each of the municipalities among whom it is distributed, and as to so much as is collected for state purposes he would be without remedy.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia.

This is a bill in equity brought by the appellee, Louis A. Brenneman, against Stephen G. Pyle, sheriff of Tyler county, W. Va., to restrain the collection of certain taxes assessed against Brenneman by the authorities of said county, and which were sought to be collected by the appellant as sheriff. For the year beginning April 1, 1900, Brenneman was arbitrarily assessed upon the personal property books of Tyler county, W. Va., for taxes upon the sum of $250,000, alleged to be on deposit to his credit in the Farmers' & Producers' National Bank and the First National Bank of Sistersville, both in the town of Sistersville, in Tyler county. The total amount of tax assessed against Brenneman on the said deposits, and sought to be collected from him, is $5,626; and there was a further tax of $115.32 on land in Sistersville valued at $5,125 included in the said assessment. The appellant, Pyle, had the tax bill in hand for collection, and was proceeding, by process of garnishment, to compel the banks named to pay to him the amount of said taxes; and thereupon, on the 12th of April, 1901, Brenneman filed his bill of complaint in the circuit court of the United States for the Northern District of West Virginia, praying for injunction. In substance, the bill of complaint sets forth that on the 1st of April, 1900, the beginning of the taxing year under the laws of the state of West Virginia, Brenneman was not a citizen of the said state, but was a citizen and resident of the state of Pennsylvania, and that the money which he had deposited in the two banks named, subject to his check, was not taxable in West Virginia; that he did not have the sum of $250,000 on deposit in the banks at the time, but that he did have deposited to his credit and subject to his check in the Farmers' & Producers' National Bank the sum of $105,514.13, and in the First National Bank of Sistersville $1,206.97, making together the sum of $106,721.10. The bill further alleges, in substance, that the said assessment was not made upon property returned by the complainant for taxation, but was made arbitrarily, without the consent of complainant, and without warrant of law. The bill of complaint was subsequently amended, and demurrers were filed, which were overruled; and on the 27th of February, 1902, Pyle filed an answer, in which he states that previous to the 19th of March, 1900, complainant had been a resident, for several years, of Tyler county, W. Va., and denies that on the 19th of March, 1900, he removed from the state of West Virginia to the state of Pennsylvania, with the intention of becoming a citizen of the latter state. The answer admits that Brenneman was assessed for the year beginning April 1, 1900, upon the personal property books of Tyler county, for the sum of $250,000 personal property, and for the sum of $5,125 on land in Sistersville; the aggregate amount of the tax on both being $5,741.32. The answer denies the illegality of the assessment, and avers that the property was subject to taxation, and that the tax is legal. In the

testimony it is shown that the amount of money which Brenneman had on deposit in the two banks in Sistersville was as stated by him, and that the two amounts named stood to his credit in the banks the 1st of April, 1900, subject to his check. Brenneman himself testified that on the 19th of March, 1900, he removed from West Virginia to Pennsylvania, and established a domicile there, and has since been a citizen and resident of that state. There was some other evidence to corroborate this testimony, and none to contradict it. The Circuit Court granted the prayer of complainant, and entered a decree for injunction, and Pyle appealed to this court.

W. N. Miller, for appellant.

T. P. Jacobs, for appellee.

Before GOFF, Circuit Judge, and PURNELL and BOYD, District Judges.

BOYD, District Judge (after stating the facts). It was admitted that this assessment was made by the authorities of Tyler county arbitrarily and without the consent of the complainant, and he has therefore waived no legal right to contest it. There was nothing in the evidence taken in the case to controvert the testimony of Brenneman that he was on the 1st of April, 1900, a citizen and resident of the state of Pennsylvania. Upon his examination he stated that prior to that time he had sold out his oil property in West Virginia, had shipped part of his personal effects, and on the 19th of March, 1900, had abandoned his residence in Tyler county, W. Va., and had become a citizen and resident of Pennsylvania; residing awhile at Titusville, and latterly at Pittsburg. Other testimony and circumstances were corroboratory of this statement. The judge in circuit was therefore, in our opinion, fully warranted in treating the non-residence of the complainant as a fact established. The principles of law relating to domicile are well settled, that, when one domicile is definitely abandoned and another selected, the change takes place. The length of time intervening is not material. "A change of domicile is consummated when one leaves the state where he has hitherto resided, avowing his intention not to return, and enters another state, intending to permanently settle there." Bradley v. Lowry, Speer, Eq. 1, 39 Am. Dec. 142. This is an elementary principle, and authorities in support of it are so numerous and harmonious that it is not deemed necessary to cite them here. This question being eliminated, it only remains to be considered whether or not Brenneman's deposits, subject to his check, in the banks at Sistersville, in Tyler county, are liable to personal property tax under the laws of the state of West Virginia, and whether the powers of a court of equity can properly be invoked, under the circumstances of the case, for his relief.

In dealing with the first question, it is necessary to determine the character of the property upon which the assessment is based. Is it tangible, personal property, of concrete form, such as to be taxable wherever found, or is it a credit—a debt due by the banks to the depositor—which has its situs at the domicile of the creditor? A deposit in bank to the credit of the depositor, and subject to his check, is not a bailment. It is a loan. The depositor does not retain a property in any particular funds, but the money which he

deposits goes into the funds of the bank. The bank owes him the amount, and the relation of debtor and creditor is created by the transaction. Morse on Banks & Banking, vol. 1, § 289; Am. & Eng. Enc. Law, vol. 2, p. 93. This is the law as it is declared by both the federal and the state courts in this country, and in obedience to it we hold that the deposits of Brenneman in the banks of Sistersville are debts due him by the banks, and that the situs of the property is the domicile of the creditor. "It is undoubtedly true that the actual situs of personal property which has a visible and tangible existence, and not the domicile of its owner, will in many cases determine the state in which it may be taxed. * * · * But other personal property, consisting of mortgages and debts generally, has no situs independent of the domicile of the owner. * * *" Case of the Taxation of Foreign-Held Bonds, 15 Wall. 300, 21 L. Ed. 179. "The general rule is that debts follow the person of the creditor, and are to be taxed at his domicile." Am. & Eng. Enc. Law. vol. 25, p. 146. "A nonresident creditor of a state cannot be said to be, in virtue of a debt which a resident owes him, owner of property within its limits. The credit is not within the state's jurisdiction, and no value to the debtor, and is not property within the state, but property of the creditor, taxable at his place of residence." Liverpool & London & Globe Insurance Co. v. Board of Assessors (La.) 11 South. 91, 16 L. R. A. 56. "For the purposes of taxation a debt has its situs at the residence of the creditor, and may be taxed there." Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558. "Debts are not property. A nonresident creditor of a city cannot be said to be, by virtue of a debt which it owes him, a holder of property within its limits." Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760.

Diverse citizenship and the amount involved in this case give the Circuit Court of the United States jurisdiction. This being so, is it the province of the court, sitting as a court of equity, to entertain complainant's bill, and grant the relief prayed for? It is true that a court of equity will not interfere to restrain the collection of taxes, ordinarily, on the ground that the tax is erroneous or illegal. This rule is based upon the reasonable ground that the exercise of such powers by the courts of equity may result in stopping the collection of taxes, to the extent of destroying the means of carrying on the government; but there are exceptions where there are special circumstances bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury, or where there is not a full, complete, and adequate remedy at law. The statute of West Virginia provides that any person claiming to be aggrieved by an assessment on property for taxes may apply for relief to the court of the county in which the assessment is made, and, if the county court refuse to make the correction asked for, the applicant may have the evidence taken thereon certified by the county court, and an appeal may be taken, as in other cases, from the order of refusal, to the circuit court of the county. The Supreme Court of West Virginia, in the case of P., C. & St. L. Ry. Co. v. The Board of Public Works, 28 W. Va. 264, has interpreted the meaning of the appeal provided for as above stated, and has said:

"Under our Constitution the Supreme Court of Appeals of the state has no power to review, by writ of error or appeal, the decisions or orders of the inferior tribunals, officers, or parties as to matters which are simply administrative, executive, or legislative, and not strictly judicial, in their nature, except where such power may be especially conferred by the Constitution."

And further in the same case it is held that:

"These authorities establish beyond the propriety of controversy that the action and decision of a designated officer or board, whether the same be a court or other body, in reviewing and correcting an assessment of corporate or other property for taxation, are no more judicial acts than the acts of the officer or authority making the original assessment. They also show that the decision or finding of such officer or board, even if the same be a court or other judicial tribunal, is not such a judicial act or judgment as can be reviewed by a supreme or appellate court possessing judicial powers only, although the statute may in express terms authorize such appellate court to review such finding or judgment."

It will thus be seen that under the law of the state there is no right of appeal to the highest court in a proceeding to impeach a tax assessment for error or illegality, and if the petition of a claimant is denied by the county court, and this action is affirmed by the circuit court, there appears to be no further remedy in the courts of law of the state.

At the time this bill was filed, the sheriff, as tax collector, was proceeding by garnishment to compel the banks in which Brenneman's deposits were placed to pay the amount of the tax; and, but for the injunction, he would have undoubtedly proceeded to make the collection. In case the taxes had been actually collected from the funds in the banks, or if, in order to stop the garnishment proceedings, the complainant had paid the same under protest, what would have been his remedy to right the wrong in collecting from him this illegal tax? He would have had none, except to sue for its recovery. This brings us to the consideration of the question as to how and against whom he could have brought his suit for recovery. By examination, we find that the assessment contains items of taxation as follows.: For state purposes, $625; for state free school purposes, $251; levy for the county of Tyler, $1,250; and, under the head of district levy, for teaching, $1,125; for building, $625; for sinking fund, $500; for interest on bonds, $500; and for the extension of the terms of schools in Sistersville, $750. Now, here are eight different levies, for as many different purposes, two of which go to the state of West Virginia, one to the county of Tyler, four to the district in which the levy is made, and one to Sistersville. This condition would necessarily have involved a diversity of litigation, and possibly the bringing of a number of different suits to recover back the money which had been collected from him improperly. In an effort to recover back his money, Brenneman, in the outset, would be confronted by the law which forbids a suit against the state; and the taxes collected for state purposes, and which had gone into the state treasury, would have been beyond his reach, and as to this much of his money, at least, he would have been divested of the same by virtue of an illegal assessment, without a remedy under the law. The exhibition of the taxbooks shows nothing erroneous, and Brenneman is compelled to resort to other proof to show that the

assessment is illegal. For this reason, therefore, this is a case coming within equity jurisdiction. "When illegality or vital defect in a tax does not appear on the face of the record, courts of equity regard the case as coming within their jurisdiction." Ogden City v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444.

From the facts in this case, and applying the law as we understand it, we hold that the Circuit Court of the United States had equity jurisdiction of the subject-matter and of the parties. We think that the circumstances bring the case under a well-recognized head of equity jurisdiction, and that the injunction restraining the collection of the tax upon the personal property assessment against Brenneman was properly issued.

We observed that there was included in the injunction the tax of $115.32 upon a lot of land located in Sistersville, valued at $5,125. This was, no doubt, an oversight. This property is taxable in Tyler county at its assessed value, and the injunction should be modified in this respect. The case is therefore remanded to the Circuit Court for the Northern District of West Virginia, and, with the modification above indicated, the judgment of the said court is affirmed.