## RISLEY et al. v. CITY OF UTICA et al.

(Circuit Court, N. D. New York. October 23, 1909.)

1. EQUITY (§ 105*)—PARTIES—JOINDER OF COMPLAINANTS.

Several property owners may join in a bill in equity on behalf of themselves and all others similarly situated to enjoin the collection of an illegal tax, which affects all of the complainants alike; their interests being common, if not joint.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 268–270; Dec. Dig. § 105.*]

2. EQUITY (§ 148*)—PLEADING—MULTIFARIOUSNESS.

A bill to enjoin the collection of illegal taxes is not multifarious, because it includes taxes levied for different purposes, where all are subject to the same infirmity, and the bill has a single purpose, which is to have all such taxes adjudged illegal.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 341–367; Dec. Dig. § 148.*]

3. TAXATION (§ 25*)—NATURE OF POWER.

The power to determine what persons and property shall be taxed belongs exclusively to the legislative branch of the government, and whether exercised by the Legislature itself, or delegated to a municipal corporation, is strictly a legislative power.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 25; Dec. Dig. § 25.*]

4. CONSTITUTIONAL LAW (§§ 209, 251*) — "DUE PROCESS OF LAW" — SCOPE OF CONSTITUTIONAL GUARANTY.

The provisions of the fourteenth constitutional amendment, that no state shall deprive any person of life, liberty, or property without "due process of law," nor deny to any person the equal protection of the laws, refer to and include all the instrumentalities of the state, to its legislative, judicial, and executive authorities; and whoever by virtue of public

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

position under the state deprives another of any right protected by that amendment violates its inhibition, and his act is that of the state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 678, 732; Dec. Dig. §§ 209, 251.*

For other definitions, see Words and Phrases, vol. 3, pp. 2227-2256; vol. 8, p. 7644.]

5. COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

The exercise by a city council of the taxing power delegated to it by the Legislature is the act of the state, within the fourteenth constitutional amendment, and a person who is thereby deprived of property without due process of law may invoke the jurisdiction of a federal court on the ground of a violation of such amendment; but, where such action is without the authority of or contrary to state law, no question arises under the Constitution which gives such court jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820-824; Dec. Dig. § 282.*

Jurisdiction in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.]

6. COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

Where a city is vested with authority to levy taxes generally for municipal purposes, in exercising such power in a manner or for a purpose not expressly prohibited by statute, it acts as an instrumentality of the state, and its action must be deemed to have been taken with the sanction of the state; and, if it deprives a person of property without due process of law, a suit by him to protect his rights is one arising under the Constitution, and within the jurisdiction of a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820-824; Dec. Dig. § 282.*]

7. TAXATION (§ 608*)—JURISDICTION—LACK OF ADEQUATE REMEDY AT LAW.

A bill for an injunction to restrain the collection of an alleged illegal tax, which alleges that a sale of real estate is threatened, and shows that there is no adequate remedy at law, states a case of equitable cognizance.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230-1241; Dec. Dig. § 608.*]

In Equity. Bill by Edwin H. Risley and others against the City of Utica and others. On demurrer to bill. Demurrer overruled.

See, also, 168 Fed. 737.

Risley & Love and John D. Kernan, for complainants.

Jones, Townsend & Rudd, for defendant Consolidated Water Company of Utica.

RAY, District Judge. Seven grounds of demurrer are alleged, viz.:

"(1) That the complaint does not state facts sufficient to constitute a cause of action against this defendant.

"(2) That the bill of complaint on its face shows no jurisdiction in this court, the amount involved being less than $2,000.

"(3) That it shows no question arising under the Constitution of the United States of America, or any act of Congress, and that no federal question is involved.

"(4) The complaint on its face shows a want of equity in the complainant's alleged case.

"(5) The complaint shows that the complainants have a whole, complete, and adequate remedy at law.

'(6) That said bill of complaint is multifarious, in that it is exhibited against these defendants and several other defendants in the bill for several distinct

and independent matters and causes which have no relation to each other, in which the defendant is in no way interested, and ought not to be entertained.

"(7) That persons are united as complainants who have no joint or common interest in obtaining the same relief."

The parties to this suit are all citizens and residents of the state of New York; hence there is no diversity of citizenship. The complainants allege that they, respectively, are the owners of real estate situated in the city of Utica, N. Y., liable to taxation; that such property has been and is being taxed; that the taxes imposed, and being imposed, and threatened to be imposed and collected, are illegal, and assessed and levied by the officials of the city of Utica under a void act of the Legislature, if it authorizes a certain contract hereafter referred to, and without any warrant of law whatever, if such act of the Legislature does not authorize the contract; that such taxes are a lien on and that such property has been levied upon and is subject to be sold to pay such taxes, and a cloud on title is thereby created; and that their property is being taken in violation of the Constitution of the United States, in that they are deprived of the equal protection of the laws, and are being deprived of their property by the imposition of such tax and its collection without due process of law by the state of New York, and that their property is being confiscated. There are other claims made which will be referred to later.

The allegations of fact contained in the bill demurred to must be taken as true. Not so of conclusions, unless they necessarily follow from facts stated. The city of Utica is one of the cities of the state of New York of the second class, existing under the provisions of chapter 18, p. 28, of the Laws of 1862, and the acts amendatory thereof and supplementary thereto. The Utica Waterworks Company became a corporation of the state of New York under the provisions of chapter 154, p. 252, of the Laws of 1848, and the acts amendatory thereof. At the time of the filing of the bill the defendant George Davis was the collector of the Thirteenth ward in said city, and held a warrant for the collection of certain city taxes levied on and against the property of one of the complainants situated in said ward. By chapter 393, p. 937, of the Laws of 1867, it was enacted:

"The common council of the city of Utica are hereby authorized and empowered to make a contract with the Utica Waterworks Company, and to fix and agree upon the sum to be paid annually therefor, for a supply of water for the extinguishment of fires in said city; and said Utica Waterworks Company shall, when such contract is made, furnish water to the city of Utica for the purposes of extinguishing fires, and shall lay and extend its pipes and conduits in such streets as the common council shall designate, and provide suitable reservoirs to constantly supply said city with sufficient water for the extinguishment of fires. Said sum fixed as the annual sum to be paid to said Utica Waterworks Company for a supply of water for the purpose of extinguishing fires shall be added in each year to the tax authorized to be raised by the forty-seventh section of the city charter of said city of Utica, and shall be collected therewith, and by the same power and authority."

On the 19th day of May, 1868, the said Utica Waterworks Company, acting under said law and by virtue thereof, entered into a contract with said city of Utica to supply water for the purposes therein mentioned. The material provisions of such contract are in substance as

follows: The company agrees (1) to furnish water for the said city for the extinguishment of fires; (2) to lay and extend its pipes, etc., in the streets designated on a map and presented to the common council; (3) to provide suitable reservoirs to constantly supply said city with sufficient water for the extinguishment of fires. The city agrees to pay $10,000 annually on the 15th day of November, and also to pay one-half of all taxes assessed on the said company or its works or property within the limits of the city and taxes thereon in excess of $1,000. If the city shall determine to extend the pipes and conduits beyond the points designated on the map on any street, then the company is to do such work, and the city is to pay 7 per cent. upon the cost of such extension. The city is also to have water from the pipes of the company for municipal purposes without payment of water rent. The company is also to erect fountains in the public streets and furnish same with water for drinking purposes.

The bill of complaint then contains this broad allegation:

"Your orators further allege, upon information and belief, that said contract in its various provisions was not authorized or made in accordance with chapter 393 of the Laws of 1867, but all of its provisions were made in hostility to the provisions of said act, and contrary thereto, and that said contract was made without authority of law, and contrary to the law, and contrary to the rights of the complainants in this suit."

The West Canada Waterworks Company was organized in May, 1898. The common council of the city of Utica granted it permission to lay pipes, etc., in the streets of the city. In such consent it was stipulated that such company would furnish water to the city and its inhabitants for 25 per cent. less than was being charged by the Utica Waterworks Company for a corresponding service. In November, 1899, the Consolidated Water Company was organized. Thereupon said West Canada Company sold and assigned all its property rights and privileges, except such consent and its obligation thereunder, to the Consolidated Company, and the Waterworks Company also sold all its property rights and privileges to the Consolidated Company. The Consolidated Company claims that the contract with the city, above mentioned, passed to it by such sale and assignment from the Waterworks Company.

The bill of complaint alleges that such contract and agreement was nonassignable, and did not pass to the Consolidated Company, and it gained no rights thereunder as against the city or its inhabitants; also that the purpose of the Consolidated Company was to create, foster, and promote a monopoly for the supplying of water to said city for domestic and fire protection purposes, and to claim and enforce payment under said contract, and that it has received large sums of money, amounting to many thousands of dollars each year, from said city and its taxpayers under such claim under such contract, and that same has been demanded, collected, and received by it and paid to it illegally, in violation of law, and contrary to the rights of the said city and its citizens and taxpayers under the Constitution of the United States, and to that extent has confiscated the property of the taxpayers of said city of Utica, in violation of the Constitution of the United States.

The bill alleges that the city authorities have neglected and refused,

unjustly, unnecessarily, and in violation of the said constitutional rights of the complainants, to extend or have extended water mains and pipes to, or onto, or through the streets in said city where they have property assessed and taxed as aforesaid, to afford them or their property protection against fire, although requested so to do, so that they and their said property are without any protection whatever against fire; that the money collected by tax for fire protection purposes is largely to pay said Consolidated Company for furnishing water for such purposes to a part of the city only, and to a part of its taxable property owners only, and that such tax is being assessed and levied and collected in defiance and violation of their rights under the Constitution of the United States.

The bill sets out at considerable length and in considerable detail the imposition and collection of such taxes for seven years past, and the present assessment and levies of such taxes for such purposes, in the city of Utica, and the enforced collection of same in some instances, and in others, when paid, alleges that same were paid in ignorance of the facts and under a mutual mistake of fact, giving the amount of such taxes assessed and levied and paid or sought to be collected by levy and sale of their property on which same has become a lien. The bill alleges the annual assessment and collection and threatened collection of taxes on all taxable property in said city, including that of the complainants, to pay one-half of the taxes levied on the property of said Consolidated Company, and that none of it has been assessed or imposed to pay any tax on the property of the Utica Waterworks Company; no tax being assessed or levied on its property.

It is true that there is no direct allegation in the bill that taxes become a lien and that the property upon which assessed and levied may be and is to be sold to pay same in case of nonpayment; but the provisions of the charter of the city of Utica are made a part of the bill and show all this. I have not referred to many acts of the common council in regard to expenses incurred and alleged to be justified and authorized by the contract referred to and also charged to be confiscatory of property. It is unnecessary to go into these details.

The suit is brought in behalf of the complainant and all similarly situated, and the proper authorities were requested to take action and institute suit, but refused. There is a direct allegation that the amount involved exceeds $2,000, exclusive of interest and costs, and it is not apparent on the face of the bill that this is not true. There are many statements of fact contained in the bill which tend to show that this is true. I do not think that the bill is multifarious. All the acts charged result in the imposition and collection of taxes alleged to be illegal, confiscatory, and imposed in violation of the rights of the complainants guaranteed by the Constitution of the United States. All the complainants are taxed for the purposes mentioned, and the main purpose of the suit is to get rid of this imposition of taxes in the future, prevent the collection of those now imposed, and the payment to the Consolidated Water Company of some $40,000 now in the hands of the city officials to pay for water supplied, etc. The situation and rights of the complainants are sufficiently similar. Their interests may not be

joint, but they are common. Conceding the broad allegations of the bill to be true, including what are claimed to be conclusions, a good and sufficient cause of action is stated; but whether it is one of which the federal courts have jurisdiction is another question, and still another question is: Have the complainants full, complete, and adequate remedy at law? If the taxes are wholly illegal may not payment be made under protest and a suit at law be maintained to recover back?

This case has been before this court on demurrer before. 168 Fed. 737. The contract above referred to is set out in full at pages 741, 742, in that case. The bill of complaint has been twice amended since then, and the case as now presented varies largely from the one then stated. At that time no other persons or parties similarly situated had come in. Additional parties plaintiff are now in the case. The main question presented on this demurrer is: Is this a case arising under the Constitution and laws of the United States?

The provision of the Constitution of the United States claimed to be offended against or violated reads as follows:

"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Const. U. S. Amend. 14.

The Legislature of the state of New York has vested the taxing power of the city of Utica in the common council of such city, and delegated that power to such city, acting by and through its common council and other officers not necessary to name. The act of 1867 also authorized the common council to make the contract referred to with the Utica Waterworks Company for a supply of water for the extinguishment of fires in said city; but by its provisions it was to lay its pipes and conduits on such streets as the common council should designate, to fix the sum to be paid, and include such sum in the tax levy and collect or cause same to be collected. Title 4 of the chapter provides, in defining the powers of the common council (section 35, c. 18, Laws 1862):

"Twenty-first. To establish, make and regulate public wells, aqueducts and reservoirs of water for the convenience of the inhabitants of the city, and its protection against fires, and to prevent the unnecessary waste of water."

The power to determine what persons and property shall be taxed belongs exclusively to the legislative branch of the government, and, whether exercised by the Legislature itself or delegated to a municipal corporation, is strictly a legislative power. N. O. Waterworks v. La. Sugar Co., 125 U. S. 18, 31, 8 Sup. Ct. 741, 31 L. Ed. 607; United States v. New Orleans, 98 U. S. 381, 392, 25 L. Ed. 225; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197.

The provisions of the Constitution refer to and include all the instrumentalities of the state, to its legislative, judicial, and executive authorities; and whoever, by virtue of public position under the state, deprives another of any right protected by that amendment to the Constitution against deprivation by the state, violates the constitutional inhibition, and as he acts for and in the name of the state, and is clothed with the power of the state, his act is that of the state. Chicago, Burlington & Q. R. Co. v. Chicago, 166 U. S. 226, 233, 234, 17 Sup. Ct.

581, 41 L. Ed. 979; Penn Mut. Life Ins. Co. v. Austin, 168 U. S. 685, 694, 18 Sup. Ct. 223, 42 L. Ed. 626; City Railway Co. v. Citizens' S. R. Co., 166 U. S. 557, 562, 563, 17 Sup. Ct. 653, 41 L. Ed. 1114; Brannon's Fourteenth Amendment, 97, 98; Ex parte Virginia, 100 U. S. 339, 347, 25 L. Ed. 676; Barney v. City of New York, 193 U. S. 440, 24 Sup. Ct. 502, 48 L. Ed. 737.

The action of a city council, authorized to exercise the taxing power, in so doing, exercises the power of the state. Murray v. Charleston, 96 U. S. 432, 440, 24 L. Ed. 760. In Barney v. City of New York, 193 U. S. 430, 24 Sup. Ct. 502, 48 L. Ed. 737, it was held that:

"Where it appeared on the face of plaintiff's own statement of his case that the act complained of was not only unauthorized, but was forbidden by the state Legislature in question, the Circuit Court rightly declined to proceed further, and dismissed the suit."

The defendant Consolidated Water Company contends that the complainants, by the allegation of the bill quoted, have placed themselves squarely within this last-mentioned case; that the bill shows on its face that the acts complained of were not only unauthorized by the state, but contrary to and in defiance of the statute authorizing the taxation of the property of the citizens and residents of the city of Utica for the purposes mentioned and complained of. This demurring defendant insists that, this being so, the acts alleged are a violation of the laws of the state of New York, have been done and are being done in violation of the laws of the state, and cannot be regarded or treated as acts of the state, or as acts done under its authority or sanction, and that, all the parties being residents and citizens of the state of New York, its courts are competent to redress the grievances complained of, and that they must be appealed to to that end. In Barney v. City of New York, supra, the court said:

"Controversies over violations of the laws of New York are controversies to be dealt with by the courts of the state. Complainant's grievance was that the law of the state had been broken, and not a grievance inflicted by action of the Legislature or executive or judicial department of the state; and the principle is that it is for the state courts to remedy acts of state officers done without the authority of, or contrary to, state law. Missouri v. Dockery, 191 U. S. 165, 24 Sup. Ct. 53, 48 L. Ed. 133; Civil Rights Cases, 109 U. S. 3, 3 Sup. Ct. 18, 27 L. Ed. 835; Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667."

The act of the Legislature of the state of New York quoted (chapter 393, p. 937, Laws 1867), authorized the common council of the city to make a contract with the Utica Waterworks Company for a supply of water for the extinguishment of fires in said city and to fix and agree upon the sum to be paid said Waterworks Company annually therefor, such sum so fixed and agreed upon to be added each year to the tax authorized to be raised by the forty-seventh section of the charter of the city (Laws 1862, p. 47, c. 18, as amended by Laws 1904, p. 324, c. 181) and collected therewith by the same power and authority. That section provides that:

"The common council shall have power in each year to raise by tax upon the real and personal property liable to taxation, in addition to the sums authorized to be raised by law, forty thousand dollars exclusive of the expense of its collection, to provide for the following purposes"—(1) a city fund for making and repairing bridges, defraying the expenses of public improvements

ordered by the common council, and other contingent expenses of the city; (2) a street lighting fund; (3) a park fund; (4) a paving fund; (5) a repair fund.

Section 48 of the charter provides how the assessment is to be made. It clearly confers the power on the common council to assess and collect the tax through the treasurer and collectors in the various wards of the city. The tax to pay for water for extinguishing fires is only authorized by the act in question (chapter 393, Laws 1867). That act is, of course, the act of the state, and it prescribes what may be done, the purpose, who shall do it, and how it shall be done. In doing the acts authorized thereby, all agencies of the city mentioned are agencies of the state of New York. If they exceed their powers, while they are still the agencies of the state, are they acting under the authority of the state, or are they acting without its authority and contrary thereto, so that it cannot be said the state is acting to deprive a person of property without due process of law, or so as to deny to a person the equal protection of the law? If the act of the Legislature referred to is misconstrued by the common council, or if no valid contract with the Consolidated Water Company exists, or if the Utica Waterworks Company had no power to assign its contract to the Consolidated Company, so that it took no rights under it, still the common council may be acting under and by virtue of the statute referred to, and, while its acts may be erroneous and not warranted by the law, may it not be said that, as it is purporting to act under the statute, the acts complained of are not wrongful individual acts for which redress must be sought in the state courts? To so hold would hardly give force to the language of the Supreme Court in Barney v. City of New York, supra:

"The principle is that it is for the state courts to remedy acts of state officers done without the authority of, or contrary to, state law."

In so far as this bill alleges acts complained of to be in violation of the statute of the state of New York above referred to and quoted, I am of the opinion that it presents a local or state question, and not a federal question, even though such acts are being done by officers of the city of Utica. If the officers of the state or city act, not by virtue of and under the authority of the statute and in pursuance thereof, but in opposition thereto and in violation thereof, they are violating the law of the state, and it cannot be said that the state has made a law authorizing such acts, or that the state has deprived any person of property without due process of law, or denied to any person the equal protection of the laws; and, even if the acts done violate the rights of the complainants, it cannot be said that the state has authorized them by its legislative, executive, or judicial instrumentalities. Clearly the Legislature of the state has not authorized the acts for they are committed in violation of its authority. The courts of the state have not held the acts legal and proper. While such acts are done by the executive officers of the state or city, clothed with power to tax in certain cases and for certain purposes, still they are acting in violation of the law of the state.

In Siler et al. v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753 (where Barney v. City of New York was examined and distinguished), as here, there was no diversity of citizen-

ship, and jurisdiction in the Circuit Court of the United States depended upon the presence of a federal question. The Constitution of the state established a railroad commission with certain powers. On March 10, 1900, the McChord act (Laws Ky. 1900, p. 5, c. 2) was passed relating to the fixing of rates, etc. This act had not been construed by the highest court of the state, nor had it been held valid by any court. The commission, acting under the statute, or claiming to so act, promulgated an order making schedules for maximum rates on freight. The Lousiville & Nashville Railroad Company filed its bill to enjoin the order of such commission. The Circuit Court held that the said McChord act violated the provisions of the fourteenth amendment. The defendants below (Siler et al.) appealed, denying the jurisdiction of the Circuit Court, claiming that no federal question was presented. The bill in that case not only attacked the validity of the McChord act as in violation of the fourteenth amendment, but also as in violation of section 4, art. 4, of the Constitution. The bill as filed also contained the averment that the said order of the Railroad Commission of Kentucky, in making a general schedule of maximum rates for the railroads mentioned in its order, was invalid, as unauthorized by the statute. Of this averment the Supreme Court, per Mr. Justice Peckham, said: "This is, of course, a local or state question." It is seen that the validity of the statute itself was challenged as in violation of the Constitution, and as a consequence the validity of all acts done or orders made under it were challenged as void. The bill also challenged the validity of the acts done and orders made by the commission as being unauthorized by the statute challenged as unconstitutional. Thus was presented the federal question that the statute was unconstitutional and void, and the order made by the commission void, and also the state or local question that the order made was invalid because not authorized by the statute. The court said:

"The federal questions, as to the invalidity of the state statute because, as alleged, it was in violation of the federal Constitution, gave the Circuit Court jurisdiction, and, having properly obtained it, that court had the right to decide all the questions in the case, even though it decided the federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only. This court has the same right, and can, if it deem it proper, decide the local questions only, and omit to decide the federal questions, or decide them adversely to the party claiming their benefit. Horner v. United States (No. 2), 143 U. S. 570, 576, 12 Sup. Ct. 522, 36 L. Ed. 266; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 154, 17 Sup. Ct. 56, 41 L. Ed. 369; Penn Mutual Life Insurance Co. v. Austin, 168 U. S. 685, 694, 18 Sup. Ct. 223, 42 L. Ed. 626; Burton v. United States, 196 U. S. 283, 295, 25 Sup. Ct. 243, 49 L. Ed. 482; Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278; People's Savings Bank v. Layman (C. C.) 134 Fed. 635; Michigan Railroad Tax Cases (C. C.) 138 Fed. 223. Of course, the federal question must not be merely colorable, or fraudulently set up for the mere purpose of endeavoring to give the court jurisdiction. Penn Mutual Life Insurance Co. v. Austin, 168 U. S. 685, 695, 18 Sup. Ct. 223, 42 L. Ed. 626; Michigan Railroad Tax Cases (C. C.) 138 Fed. 223, supra."

Taking Barney v. City of New York and the Siler Case, just quoted, together, it is clear that, unless the bill of the complainants here bases their ground of complaint on the federal question that the statute of 1867 is void, or on some other federal question (some question other

than acts done in violation of the act of the Legislature of 1867), the demurrer must be sustained on the ground this court has no jurisdiction. If a federal question is found in the bill, it must not be merely colorable or set up for the purpose of giving this court jurisdiction. Siler et al. v. Louisville, etc., 213 U. S. 191, 192, 29 Sup. Ct. 451, 53 L. Ed. 753; Penn Mut. L. I. Co. v. Austin, 168 U. S. 685, 695, 18 Sup. Ct. 223, 42 L. Ed. 626. There must be allegations of fact showing that a federal question is involved. It is self-evident that the question whether or not the contract between the city and the Waterworks Company was assignable and passed to the Consolidated Company is a state and local question, and not a federal question. However, this may be a step in leading to and presenting a federal question, and, if a federal question is presented, then the question of the assignability of such contract may be tried here, and of itself may be decisive of this case. Siler et al. v. Lousiville, etc., supra.

Having alleged the nonassignability of the contract and the buying up of the other water companies, the bill alleges that the purpose of the Consolidated Water Company was to create, foster, and promote a monopoly for the supplying of water to the inhabitants of the city of Utica for domestic and fire protection uses and to enable said Consolidated Company to claim and enforce against the taxable property of the city payment on account of said contract, and that under the said claim it has annually demanded and received from the city of Utica large sums of money, giving the amounts, contrary to law, in violation of law, and in violation of the rights of said taxpayers of the city of Utica, and contrary to the Constitution of the United States, and in hostility thereto, which have been levied by the city of Utica on the taxable property of the city contrary to the rights of the said taxpayers under the Constitution of the United States, and contrary to and in violation of law, and to that extent has confiscated so much of the property of the taxpayers of the city of Utica, which confiscation, says the bill, is unlawful, illegal, and contrary to the Constitution of the United States. It is undoubtedly unlawful and illegal for any person to confiscate, under the guise of taxation or otherwise, the property of another or of others. The provisions of the Constitution of the United States, referred to, are, however, aimed at the action of the states, and not of individuals. If, then, the state has conferred the power to tax the property owners of a city in a certain event and for a certain purpose and to a certain amount, defining the event, purpose, and amount, on certain officers of such city, and that act of the state was legal, and not unconstitutional, but those who are to receive the taxes when collected unlawfully assign or pretend to assign their claim to another, who has no right to receive them, and that person acts illegally and intends so to do, and the city officials, under a mistake of fact, or of fact and law, assume that the right to assign existed, and proceed to levy, assess, and collect the tax and pay it over, has the state deprived any person of property without due process of law, or denied to any person the equal protection of the laws? Clearly it has not impaired the obligation of any contract by its action, so as to offend against the constitutional provision in that regard. It has authorized

the making of a certain contract for a certain purpose, and the levy and collection of a tax to meet its obligations. The state, by its Legislature, has never affirmed the legality of the contract, or expressly authorized an assignment thereof. Its courts have neither affirmed its legality or invalidity, nor affirmed or denied its assignability.

The bill also alleges that for the purpose of still further increasing the amounts annually assessed upon the property of the taxpayers of the city of Utica, and collected and paid to said Consolidated Company, and claimed by it under said contract, the said company has leased or otherwise acquired the control of the property of the New Hartford Waterworks Company and the Whitesboro Water Company (outside the city of Utica), and have connected mains with the city of Utica for supplying water to the inhabitants of certain towns and districts outside said city—naming them—all of which water passes through the city mains, and that by reason of such facts the assessed valuation of the property of such Consolidated Company has been largely increased, and that annually large sums of money have been collected from the taxpayers of Utica under the provisions of said contract and paid over to said Consolidated Company to reimburse it for one-half the taxes levied against it, less $1,000, and that all such money so levied and collected as a tax has not been paid to the Utica Waterworks Company, and that the taxes paid with such money so collected were not assessed against said Utica Waterworks Company, but against the Consolidated Company, and the allegation is that all this was done and is being done by the said city authorities wrongfully, without authority of law, contrary to law, and contrary to and in violation of the Constitution of the United States. The bill then alleges as follows:

"Your orators further allege, upon information and belief, that neither the Utica Waterworks Company nor the Consolidated Water Company of Utica have complied with any of the conditions required by chapter 393 of the Laws of 1867, and the contract hereto attached and made a part of this amended bill of complaint, and each has failed, neglected, and refused to comply with the requirements of said contract, and that neither the Utica Waterworks Company nor the Consolidated Water Company of Utica has ever furnished a sufficient and adequate supply of water for fire protection purposes to the property of the city of Utica, and that by reason of the collection of said annual taxes by the city of Utica, and the payment of the amounts so collected over to the said water company, the same has been paid without authority of law, and in violation of the law, and in violation of the rights secured to the inhabitants of Utica by the Constitution of the United States, and that said sums of money annually collected and paid to the said water company have been collected and paid by the city and received by the water company by mutual mistake of fact as to all of the parties in interest."

Assuming that all has been done by the common council, treasurer, and collectors of the wards of the city of Utica, still there is no allegation that the state by its courts or Legislature has authorized it, or declared it legal or constitutional. In fact, the allegation is that it was done in violation of the statute enacted by the Legislature, and in violation of the terms of the contract which was authorized by the Legislature and entered into between the city and the Utica Waterworks Company. Unless the acts of the city officials referred to are to be regarded as the acts of the state, and authorized or sanctioned by it, no federal question is presented by these allegations.

We have a breach of contract and a breach of duty by the city officials, but no sanction of the state, unless it be implied. But how can it be said that a state has authorized or sanctioned acts done by the officers of its municipalities and alleged to be illegal and in violation of the Constitution of the United States, where it is alleged that the state enacted a law defining and pointing out just what such officers might do, and that in the acts in question they have acted in opposition thereto and in violation thereof, instead of in accordance therewith?

In Arbuckle v. Blackburn, 191 U S. 405, 24 Sup. Ct. 148, 48 L. Ed. 239, it was decided that where the state law under which the state officer acted was conceded to be constitutional, or its constitutionality was not questioned, but the dairy and food commissioner put a construction on it which made it unconstitutional, and his proposed and instituted acts unlawful and in violation of the federal Constitution, and the courts of the state had not decided that his proposed acts were constitutional and lawful, or his construction correct, no federal question was presented, and that jurisdiction rested on diversity of citizenship alone. The court said:

"The suggested controversy was purely hypothetical, and based the supposed constitutional objections on the contingency that, on issues of fact, it might be judicially determined that Ariosa came within the statute, which complainants denied."

In the case at bar the courts of the state of New York are open to the complainants, and if it shall be held by them that the acts complained of are legal, justified by the law or the act of the Legislature referred to, then such judicial intrepretation will raise the federal question; for the state, through its courts, will have spoken. But until that has been done, and so long as the statute referred to is not questioned as contrary to the federal Constitution, and it is alleged that th acts of the city council are contrary to and in opposition to the law of the state, it is presumed that the courts of the state will do their duty, and undo all the illegal acts of the city officials, and give full redress. In Defiance Water Co. v. Defiance, 191 U. S. 184, 191, 24 Sup. Ct. 63, 66, 48 L. Ed. 140, the court said:

"Ordinarily the question of the repugnancy of a state statute to the impairment clause of the Constitution is to be passed upon by the state courts in the first instance; the presumption being in all cases that they will do what the Constitution and laws of the United States require."

See, also, New Orleans v. Benjamin, 153 U. S. 411, 424, 14 Sup. Ct. 905, 38 L. Ed. 764; Chicago & Alton R. R. Co. v. Wiggins Ferry Co., 108 U. S. 18, 1 Sup. Ct. 614, 617, 27 L. Ed. 636.

In Barney v. City of New York, 193 U. S. 438, 439, 24 Sup. Ct. 501, 48 L. Ed. 737, the Supreme Court quoted the following, with approval, from Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667, and the Civil Rights Cases, supra:

"But when a subordinate officer of the State, in violation of state law, undertakes to deprive an accused party of a right which the statute law accords to him, as in the case at bar, it can hardly be said that he is denied, or cannot enforce, 'in the judicial tribunals of the state' the rights which belong to him. In such a case it ought to be presumed the court will redress the wrong. * * * In the Civil Rights Cases, in which the court was dealing with Act

March 1, 1875, 18 Stat. 335, c. 114 (U. S. Comp. St. 1901, p. 1260), Mr. Justice Bradley said: 'In this connection it is proper to state that civil rights, such as are guaranteed by the Constitution against state aggression, cannot be impaired by the wrongful acts of individuals, unsupported by state authority in the shape of laws, customs, or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual—an invasion of the rights of the injured party, it is true, whether they affect his person, his property, or his reputation; but if not sanctioned in some way by the state, or not done under state authority, his rights remain in full force, and may presumably be vindicated by resort to the laws of the state for redress.' "

In that case the acts complained of were done by or through the Board of Rapid Transit Railroad Commissioners. In Siler v. Louisville & Nashville R. R. Co., supra, the court decided the case on the local or state question that the commission had no power under the statute of the state to make the order in question (see page 194 of 213 U. S., page 455 of 29 Sup. Ct. [53 L. Ed. 753]); but the court said:

"If the averment as to the invalidity of the order of the commission were the only ground upon which a federal question was founded, and if the bill alleged that the order was invalid because it was not authorized by the state, either by statute or in any other way, the objection might be good; but the bill sets up several federal questions."

The bill proceeds to allege that, acting under the alleged authority given by such contract and by direction of the common council of the city of Utica, the Waterworks Company and the Consolidated Company have laid water mains in about 98 miles of the streets of the city, leaving about 30½ miles of streets and the inhabitants thereon without any means for a water supply, or a water supply of any description, for any purpose, and that the property on said 30½ miles of streets is left without water for fire protection, but that, notwithstanding this fact, the property has been annually assessed and taxes levied thereon and collected on account of the water mains laid in other parts of the city; also, that mains have been duplicated and the cost assessed on all the property of the city, and taxes levied and collected on the percentage named in said contract. The bill alleges that the common council was without authority or jurisdiction to make such arrangement with the Consolidated Company, and that the agreement, therefore, was without authority of and contrary to law, contrary to the rights of all the taxpayers, and hostile to and in violation of their rights under the Constitution of the United States, and constitutes a confiscation of their property, contrary to such Constitution and in hostility thereto. The correctness of this conclusion that the acts are in violation of the Constitution, so far as raising a federal question is concerned, depends on the character of the acts done and the authority under which done. If not done by authority of the state of New York, express or implied, or sanctioned by it, and especially if done in violation of and opposition to its laws conferring the power to impose and collect taxes on the common council, and in violation of the contract authorized by the Legislature and entered into with the Waterworks Company, we have a violation of the laws of the state of New York pure and simple, committed by the officials of the city of Utica. The only authority conferred by the Legislature upon the common council of the city of

Utica in regard to the matters here in controversy was to enter into a contract with the Waterworks Company to provide a supply of water for the extinguishment of fires in said city, and to assess, levy, and collect, through the treasurer and collectors of the city, a tax to pay for such water. This is not a general and unlimited power, but is restrictive. I find no allegation in the bill anywhere that this statute is confiscatory in its operation, or in violation of the Constitution of the United States.

Assume that the common council, instead of entering into a contract with the Waterworks Company named in the act of the Legislature, had entered into a contract with some other company for a supply of water for such purpose, and had then proceeded to assess, levy, and collect a tax to pay therefor under the terms of such contract; is it true that such illegal action would present a federal question, or a case cognizable by the Circuit Court of the United States? No one can doubt that in such case an action in equity would lie in the state courts to enjoin the levy and collection of the tax as wholly unauthorized; no general taxing power having been conferred on the city of Utica or any of its officers by its charter. But it does not follow that such remedy may be pursued in the federal courts. If the state should sanction such action by its courts, a different question would be presented. If the Waterworks Company could not assign and transfer the contract lawfully made (we will assume) with the city, and the Consolidated Company took no rights under it as against the city, then the situation is the same as if the common council had acted and is acting, in imposing the tax, wholly without authority of law, and in opposition to or disregard of the law restricting its power to contract to a specific company. In short, it would present the case of a municipal corporation of a state assessing and levying and collecting a tax upon the property of its citizens, not only without authority of, but in violation of, the law of the state. Would this be the act of the state in any legal sense?

In Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760, the city of Charleston was incorporated by an act of the Legislature of the state of South Carolina, which act of incorporation conferred upon the city the power to make—

"such assessments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit, and advantage of the city as shall appear to them expedient."

Under this power the city passed an ordinance to raise supplies to meet the expenses of the city government for the current fiscal year by assessing a tax of two cents on the dollar on the value of all real and personal property in the city; the tax on the city stock (really an indebtedness of the city) to be retained by the city treasurer out of the interest thereon, when the same became due and payable. The tax was levied and retained from the stock held by Murray, a resident of Bonn, Germany, who brought suit in the state court to recover the amount of the tax assessed and retained under this ordinance. Judgment was given for the defendant, and affirmed by the Supreme Court of the state, thus necessarily affirming the validity of the ordinance

and the validity of the tax so assessed. The case was taken to the Supreme Court of the United States on writ of error, and it was objected that the Supreme Court had no jurisdiction, as no federal question was raised of record or presented in the state courts. This objection was overruled. The court held:

"Wherever rights, acknowledged and protected by the Constitution of the United States, are denied or invaded by state legislation, which is sustained by the judgment of a state court, this court is authorized to interfere."

Amongst other things, the court said:

"But neither the charter itself, nor any subsequent acts of legislation, directly or expressly interfered with any debts due by the city, or gave to the city any power over them. They simply gave limited legislative power to the city council. It was not until the ordinances were passed under the supposed authority of the legislative act that their provisions became the law of the state. It was only when the ordinances assessed a tax upon the city debt, and required a part of it to be withheld from the creditors, that it became the law of the state that such a withholding could be made. The validity of the authority given by the state, as well as the validity of the ordinances themselves, was necessarily before the court of common pleas when this case was tried; and no judgment could have been given for the defendants without determining that the ordinances were laws of the state, not impairing the obligation of the contracts made by the city with the plaintiff. * * * It is plain, therefore, that both in the common pleas and in the Supreme Court of the state a federal question was presented by the pleadings and was decided—decided in favor of the state legislation, and against a right the plaintiff claims he has under the Constitution of the United States. The city ordinances were in question on the ground of their repugnancy to the inhibition upon the states to make any law impairing the obligation of contracts; and the decision was in favor of their validity. Nothing else was presented for decision, unless it be the question whether the acts of the state Legislature authorized the ordinances; and that was ruled affirmatively. The jurisdiction of this court over the judgments of the highest courts of the states is not to be avoided by the mere absence of express reference to some provision of the federal Constitution. Wherever rights acknowledged and protected by that instrument are denied or invaded under the shield of state legislation, this court is authorized to interfere. The form and mode in which the federal question is raised in the state court is of minor importance, if, in fact, it was raised and decided. The act of Congress of 1867 gives jurisdiction to this court over final judgments in the highest courts of a state in suits 'where is drawn in question the validity of a statute of, or an authority exercised under, any state, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of their validity.' * * * That involved in the judgment of the court of common pleas and in that of the Supreme Court of the state was a decision that the city ordinances of Charleston were valid, that they did control the contract of the city with the plaintiff, and that they did not impair its obligation, is too plain for argument. * * * The court gave judgment for the defendant, which would have been impossible, had it not been held that they have the force of law, notwithstanding the Constitution of the United States, and the Supreme Court affirmed the judgment. Our jurisdiction, therefore, is manifest."

In the case at bar no court of this state has sustained the validity of the acts complained of under the state statute or the action of the city council. In fact, the bill of complaint as amended repeatedly, and from beginning to end, alleges that such acts were contrary to and in violation of the law, and without warrant of law. The validity of the act of the Legislature of the state is not denied, only the acts done under it. If, then, the common council of the city of Utica acted in defiance of

the act of the Legislature, and no court of the state has upheld its action as a valid exercise of power under such statute, how can it be said that its unauthorized resolutions or ordinances imposing the taxes, if there were any, and it is not alleged there were, became a part of the law of the state, or the action of the state?

However, the Supreme Court of the United States, in the case of Murray v. Charleston, held that a federal question was presented in the state courts. That federal question must have been presented on the allegations setting up the state law, the city ordinances enacted by virtue thereof and claimed to be authorized thereby, the nature and character of the "stock" or debt of the city, and the retention from the plaintiff of a part of that amount under the guise of taxation by virtue of the ordinance. If a federal question was thus presented in the state court, it did not arise out of the decision of the Supreme Court of the state of South Carolina, but from the unconstitutionality of the ordinance, which, as we have seen, was held to have become a law of the state, when enacted, whether actually authorized by the statute or charter of the city or not. I think, therefore, that the real and determining question here is whether or not the resolutions or action of the common council of the city of Utica in imposing the tax or taxes in question had the force of law—are to be regarded as laws of the state. In New Orleans Waterworks Company v. Louisiana Sugar Refining Co., 125 U. S. 18, 30, 31, 8 Sup. Ct. 741, 747, 748, 31 L. Ed. 607, this question was under consideration, and the court per Mr. Justice Gray without dissent, said:

"In order to come within the provision of the Constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state. The prohibition is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals. * * * As later decisions have shown, it is not strictly and literally true that a law of a state, in order to come within the constitutional prohibition, must be either in the form of a statute enacted by the Legislature in the ordinary course of legislation, or in the form of a Constitution established by the people of the state as their fundamental law. * * * So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the Legislature to the corporation as a political subdivision of the state, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the Constitution of the United States. For instance, the power of determining what persons and property shall be taxed belongs exclusively to the legislative branch of the government, and, whether exercised by the Legislature itself, or delegated by it to a municipal corporation, is strictly a legislative power. United States v. New Orleans, 98 U. S. 381, 392, 25 L. Ed. 225; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197. Accordingly, where the city council of Charleston, upon which the Legislature of South Carolina, by the city charter, had conferred the power of taxing persons and property within the city, passed ordinances assessing a tax upon bonds of the city, and thus diminishing the amount of interest which it had agreed to pay this court held such ordinances to be laws impairing the obligation of contracts, for the reason that the city charter gave limited legislative power to the city council, and, when the ordinances were passed under the supposed authority of the legislative act, their provisions became the law of the state. Murray v. Charleston, 96 U. S. 432, 440, 24 L. Ed. 760. See, also, Home Ins. Co. v. City Council of Augusta, 93 U. S. 116, 23 L. Ed. 825."

In United States v. New Orleans, 98 U. S. 381, 392, 393, 25 L. Ed. 225, the court, per Mr. Justice Field, said:

"The position that the power of taxation belongs exclusively to the legislative branch of the government no one will controvert. Under our system it is lodged nowhere else. But it is a power that may be delegated by the Legislature to municipal corporations, which are merely instrumentalities of the state for the better administration of the government in matters of local concern. When such a corporation is created, the power of taxation is vested in it as an essential attribute, for all the purposes of its existence, unless its exercise be in express terms prohibited. For the accomplishment of those purposes, its authorities, however limited the corporation, must have the power to raise money and control its expenditure. In a city, even of small extent, they have to provide for the preservation of peace, good order, and health, and the execution of such measures as conduce to the general good of its citizens; such as the opening and repairing of streets, the construction of sidewalks, sewers, and drains, the introduction of water, and the establishment of a fire and police department. * * * All of them require for their execution considerable expenditures of money. Their authorization, without providing the means for such expenditures, would be an idle and futile proceeding. Their authorization, therefore, implies and carries with it the power to adopt the ordinary means employed by such bodies to raise funds for their execution, unless such funds are otherwise provided. And the ordinary means in such cases is taxation. A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose."

It seems, from all the cases, that a municipality like the city of Utica has delegated to it legislative powers, especially in matters of taxation, and that in imposing taxes it represents the state, and that its acts are the acts of the state, unless expressly prohibited.

The bill of complaint, as amended, and now before the court, seems, however, to charge that all the acts complained of were done in violation and defiance of all law, as well as of the Constitution of the United States. There is no allegation that the common council of the city of Utica adopted ordinances or by-laws for the imposition of these taxes under the powers delegated to it by the Legislature, and that same became a part of the law of the state, and were unconstitutional and void as in conflict with the Constitution of the United States. How can it be said that the state has had anything to do with the imposition of these taxes, or that it has sanctioned them, unless we infer the existence of ordinances or by-laws? Were these acts the acts of the state, for the reason they were done by the common council of the city illegally and without warrant of law? If we regard the municipality as an instrumentality or agency of the state, with delegated legislative powers, and, notwithstanding the limited character of the taxing power conferred, treat such acts as those of the city acting by its common council in the exercise of such powers, and not as the wrongful acts of the individuals composing it, I think a federal question is presented, and that this court has jurisdiction. While certain powers of taxation were conferred expressly, still in United States v. New Orleans, supra, the court said:

"When such a corporation is created, the power of taxation is vested in it as an essential attribute, for all the purposes of its existence, unless its exercise be in express terms prohibited."

There is no law of the state of New York in "express terms" prohibiting the exercise of the power that was exercised by the common

council in this case and claimed to be in violation of the Constitution of the United States. The same case says:

"But it [the power of taxation] is a power that may be delegated by the Legislature to municipal corporations. which are merely instrumentalities of the state for the better administration of the government in matters of local concern."

This being so, we necessarily conclude that the city of Utica, a municipal corporation of the state of New York, was vested with all powers of taxation for all purposes necessary for its existence (and the procuring of water for fire protection is such a purpose, it having no water supply of its own) except those "in express terms prohibited"; that there was no express prohibition by the Legislature on the city or common council, which forbade it to do what it did do; that, in acting as it did and is doing through its common council, it was but a mere instrumentality of the state, and that all such acts must be deemed to have been done by or with the sanction of the state of New York; that the acts of the city cannot be regarded or treated as the wrongful acts of individuals merely, done in violation of the law of the state. As the state had acted in doing what was done, it is not necessary that the complainants pursue their remedy in the state courts as for a violation of state laws.

The case of Barney v. City of New York, supra, does not seem to reach the case of a municipal corporation, where the power of taxation is granted generally by the state, except as prohibited in express terms, as in that case and others cited the powers of the state officers or agencies were expressly limited; that is, they had only the powers expressly granted. In 5 Encyclopedia U. S. Sup. Ct. Reports, 545, the author states the rule thus:

"When a subordinate officer or agency of the state, in violation of state law, undertakes to do that which is not only unauthorized, but which is forbidden by the state law, such action cannot be said to be action by the state, within the intent and meaning of the fourteenth amendment. In such cases the grievance is simply that the state law has been broken, and not that the state has inflicted a wrong through its legislative, executive, or judicial department.

3. Aggrieved Person must Invoke the Aid of the State Courts.—The doctrine here is that the aggrieved party must first invoke the aid of the state courts, since it is for the state courts to remedy the acts of state officers done without authority of, or contrary to, state law. In such a case the complaining party must exhaust his remedy in the state courts by prosecuting his case to the state court of last resort for cases of that character; and until he has done this it cannot be said that he has been denied due process or deprived of his property by state action. If the decision of the highest state court to which he can resort is adverse to him, he can then take his case on writ of error to the United States Supreme Court upon the ground, not that the proceeding or action complained of was contrary to or unauthorized by state law, but upon the ground that what was complained of as a deprivation of life, liberty, or property without due process of law, in violation of the fourteenth amendment, has at last received the sanction of the state, and, in effect, become the act of the state itself."

Under the allegations of the bill this clearly is a case of equitable cognizance. Boise Artesian Water Co. v. Boise City, 213 U. S. 276, 284, 285, 29 Sup. Ct. 426, 53 L. Ed. 796, and cases cited; Ogden City

v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.

It would seem plain that much is demanded by way of relief that could not be granted, conceding all the allegations of the bill to be true; but a demurrer does not lie to the demand for relief. Nor is it intended to indicate that all the matters charged, if true, are the subject of relief. What is decided is that, on the whole bill, a case is made of equitable cognizance, and of which this court has jurisdiction, and that the bill is not open to the charge of multifariousness. Several questions have been raised and discussed, which the court is not called upon to determine in advance of the final hearing. It will hardly be contended, I think, that the city of Utica, by its common council, had the right to go outside the city and make improvements and expend money, or contract with some corporation so to do, for the benefit of outside localities, as well as Utica, in order to secure water for both fire protection and domestic uses in the city, and then levy and assess a tax on all the property and property owners in the city to meet such expenses, while giving to a portion of such inhabitants only the benefits of fire protection and the use of such water for domestic purposes. The power of taxation is very broad and sweeping, and necessarily must be; but at the same time it has its limitations by the provisions of the Constitution of the United States, as many cases hold, and some of which were cited when this case was before this court on the former demurrer. There should be a speedy determination of this case on the merits, and if not at issue and tried at the December term the motion to vacate or modify the injunction may be renewed.

The demurrer is overruled, and the motion to dissolve the injunction denied for the present.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes